## Richmond

Thomas W. Brown v. John H. Vinson, Jr., Administrator of the Estate of Robert E. Vinson, Deceased.

November 26, 1956.

Record No. 4572.

Present, Hudgins, C. J., and Eggleston, Spratley, Miller and Whittle, JJ.

The opinion states the case.

*Ernest G. Garrett, Jr.* (*John G. May, Jr.; G. Kenneth Miller; W. Potter Sterne,* on brief), for the plaintiff in error.

*Walter E. Rogers* (*Morton G. Goode; Richard E. Lewis; Williams, Mullen, Pollard & Rogers,* on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This case is before us upon a writ of error to a judgment rendered by the Circuit Court of Dinwiddie County on October 22, 1955, in an action at law wherein John H. Vinson, Jr., administrator of the estate of Robert E. Vinson, deceased, was awarded a judgment for

$10,000 against Thomas W. Brown for the wrongful death of plaintiff's decedent, resulting from a collision between two trucks.

The case was tried before a jury in October, 1953. At the conclusion of plaintiff's evidence the defendant moved to strike, which motion was overruled. The motion was renewed at the conclusion of all the evidence and again overruled. When the jury returned its verdict on October 31, 1953 the defendant moved the court to set the verdict aside and enter final judgment in his favor or in the alternative to grant him a new trial for errors then assigned. This motion was taken under advisement and, for some unexplained reason, not ruled upon until August 16, 1955, on which date it was overruled for reasons set forth in a written opinion.

The defendant assigns eleven errors, seven of which deal with the giving of improper instructions; the others challenge the court's failure to set aside the verdict and enter final judgment for the defendant or in the alternative grant him a new trial.

In our view (although there is merit in the objection to some instructions) the case can be determined by dealing with two questions, *viz*: (1) Did the negligence of plaintiff's decedent contribute to the accident, and (2) was the last clear chance doctrine applicable to the proven facts?

We are mindful of the rule that where a case is before the court upon a jury's verdict which bears the approval of the trial court we are required to view the evidence in the light most favorable to the prevailing party.

The evidence disclosed that Vinson was killed in a head-on collision between a Ford wrecker truck driven by him and a Dodge truck loaded with fertilizer driven by Brown. The collision occurred about 6:00 a. m. on May 12, 1952, on U. S. Route 460, about 18 feet west of the entrance to a convict road camp located on the north side of the road. Vinson was traveling east and Brown was traveling west; the vision of each being unobstructed. At the point of collision the road had a slight curve to the left of the Brown truck, and was slightly banked, the lower part of the road being to the south. The hard surface was approximately 21 feet wide, with a broken white line in the center. The shoulder on the north extended 8 or 10 feet between the hard surface and a ditch. The weather was clear; the surface of the road dry, and it was "good daylight".

The picture exhibits show that the Brown truck was struck on the front, the damage extending to its right side, and that the Vinson

truck was struck on the front, with the damage extending to its left side. After the collision the Vinson truck came to rest in the north lane with the front headed northwest; the front of the truck being off the hard surface and the rear in the north lane. The Brown truck came to rest off the road on the south side 56 feet from a round hole about one foot north of the center line of the road (on Brown's side), which hole was apparently the point of collision. There were two deep, parallel "cut marks" in the surface of the road commencing at or near the round hole, one extending seven and one-half feet and the other a lesser distance, about 14 inches apart. These cuts extended southwest from the hole.

There were only two eye-witnesses to the accident, *i.e.*, Thomas W. Brown the defendant, and James C. Pond, the driver of a bread truck who was returning from the convict camp to Route 460. Pond saw both vehicles as they approached the point of collision. He had stopped his truck in the camp entrance approximately 15 feet back from the line of Route 460. He testified that when he saw the approaching trucks each was about 350 feet from the point of collision and traveling at about the same (reasonable) rate of speed; that the Vinson truck was on the north side of the road, which was its left side; that the Brown truck was also on the north side, which was its proper right hand side; that both vehicles approached the point of collision on the north (Brown's) side of the road; that immediately before the collision both drivers turned their vehicles toward the south side of the road, and that the impact occurred near the center thereof.

Defendant Brown was called as an adverse witness by the plaintiff and testified that when he first saw the Vinson truck it was on its proper side of the road but as it approached him it pulled from its side of the road to his (Brown's) side and continued to a point slightly off the hard surface on the north side, and then suddenly pulled back toward the center of the road, the left front of the Vinson truck striking his truck on the right front side; that when the Vinson truck pulled to his (Brown's) side of the road it was too close for him to avoid the accident.

Other witnesses, including two State troopers, described the physical damage to the trucks and the marks on the highway as observed by them after the accident.

The trial judge stated in his written opinion that the testimony of S. E. Williams and Sam Pulley prompted the court in giving the last clear chance instruction. These witnesses were introduced in an

attempt to contradict Brown. Williams testified that he talked with Brown after the accident and that Brown told him that the Vinson truck was on his (north) side of the road "as far as he could see"; that Vinson "never did look like he was any life to him at all, never did show no motion at turning out at all." Pulley testified that Brown told him that "as far as he knew the boy (Vinson) was asleep", that he "seen him way up the road and blinked his lights and blowed his horn; after he seen he wasn't going to move he (Brown) decided he would try to go by him on the left side of the road."

Clearly the evidence of all witnesses and the physical marks on the highway show beyond peradventure that just prior to the collision Vinson was on the wrong side of the road and that the collision occurred on Brown's side of the highway; thus Vinson's negligence in being on the wrong side of the road, unexplained, convicts him of concurring negligence, and unless the case can be saved by the last clear chance doctrine it must fail. The last clear chance instruction read:

"The Court instructs the jury that even if you believe from the evidence that plaintiff's intestate, Robert E. Vinson, because of his negligence in driving on the wrong side of the road in meeting defendant's Dodge truck was in a situation of danger, but could readily help himself, but that the said Vinson was inattentive and apparently oblivious of the surrounding circumstances and conditions of peril, and that the driver of defendant's Dodge truck saw him and realized, or in the exercise of reasonable care should have realized, his danger in time to have avoided the collision which caused his death, then you shall find your verdict for the plaintiff."

The defendant objected to the giving of this instruction for the reasons that the negligence of Vinson in driving his truck on the wrong side of the highway continued down to the time of impact and thus Brown had no last clear chance to avoid the collision after he realized or should have realized that the plaintiff's decedent was in a position of peril; that the only evidence indicating that the defendant had a supposed last clear chance to avoid the collision was developed through the testimony of Williams and Pulley, introduced for the ostensible purpose of impeaching Brown and said evidence was not affirmative proof and was of little, if any, probative value.

The Brown truck was on its proper side of the highway and the Vinson truck was undeniably on its improper side. According to Pond, when the trucks were within 10 feet of each other, Vinson ap-

parently attempted to cut his truck back on his side of the road, and Brown apparently attempted to avoid the collision by turning to Vinson's side. Under these circumstances, no last clear chance to avoid the accident was available to Brown. He was presented only with a guessing chance.

Prior to the accident, Brown, seeing Vinson some distance from him on the wrong side of the road, was justified in assuming that he would comply with the law and return to his proper side of the highway. This is true regardless of how far a vehicle may be viewed on the wrong side of the highway, and the presumption continues so long as reasonable time remains for the vehicle being improperly operated to return to its proper lane. When Vinson failed to return to his proper side of the highway, Brown, who was operating his truck in a proper manner, was placed in a sudden emergency with three possible avenues of escape, none of which presented a clear chance to avoid the collision. If he continued straight or attempted to stop his truck he was faced with the catastrophe of a head-on collision; if he cut his truck to the right and the Vinson truck continued its course to the right undoubtedly a collision would have occurred; and if, as in this case, he cut his vehicle to the left and Vinson contemporaneously decided to get back on his side of the road, the collision would be (and was) inevitable. Certainly neither of these avenues of escape presented a last clear chance to avoid the collision.

The doctrine of last clear chance does not wipe out or supersede the defense of contributory or concurring negligence. Such doctrine applies only when the negligence of the defendant becomes the proximate cause and the antecedent negligence of the plaintiff a remote cause. In this instance the negligence of plaintiff's decedent continued down to the time of the collision and at the least concurred with that of the defendant as an immediate, proximate and efficient cause of the accident. *Craighead* v. *Sellers*, 194 Va. 920, 923, 76 S. E. 2d 212, 214.

For the reasons stated the judgment of the trial court is reversed and final judgment is here entered for the defendant.

*Reversed and final judgment.*