## Richmond

ELTON L. CLARK v. CHARLES KIMNACH.

ELTON L. CLARK v. MARTY KIMNACH AND CHARLES KIMNACH.

MARTY KIMNACH v. ELTON L. CLARK.

March 11, 1957.

Record Nos. 4632, 4633, 4634.

Present, All the Justices.

The opinion states the case.

*Lawson Worrell, Jr.* and *Preston P. Taylor (Williams, Cocke, Worrell & Kelly*, on brief), for plaintiff in error, Elton L. Clark.

*Thomas M. Johnston (Richard B. Kellam; Kellam & Kellam; Seawell, Johnston, McCoy & Winston*, on brief), for defendant in error, Charles Kimnach.

*Preston P. Taylor* and *Lawson Worrell, Jr., (Taylor, Gustin & Harris*, on brief), for plaintiff in error, Elton L. Clark.

*Thomas M. Johnson (Richard B. Kellam; Seawell, Johnston, McCoy & Winston; Kellam & Kellam*, on brief), for defendants in error, Marty Kimnach and Charles Kimnach.

*Thomas M. Johnston (Richard B. Kellam; Kellam & Kellam; Seawell, Johnston, McCoy & Winston*, on brief), for plaintiff in error, Marty Kimnach.

*Lawson Worrell, Jr.* and *Preston P. Taylor*, for defendant in error, Elton L. Clark.

SNEAD, J., delivered the opinion of the court.

These three actions arose out of a collision which occurred 1:30 A. M., April 15, 1955 on Laskin Road, also known as Highway 164, Princess Anne County, Virginia, between a motor vehicle owned and operated by Elton L. Clark and a motor vehicle operated by Marty

Kimnach in which her husband Charles Kimnach was a passenger.

Clark filed his motion for judgment on July 11, 1955 against Marty Kimnach and Charles Kimnach for personal injuries sustained. Marty Kimnach and Charles Kimnach filed their respective motions for judgment against Clark on August 22, 1955 for personal injuries. Over the objection of Clark, the three cases were consolidated for trial and were tried together on December 8 and 9, 1955 before a single jury.

The parties will be hereinafter referred to at times as plaintiff and defendants in accordance with their positions in the respective cases in the trial court.

In plaintiff Clark's action against both Kimnachs the court struck the evidence as to defendant Charles Kimnach on the ground that there was no proof of agency between Kimnach and his wife, and in this case the jury found in favor of defendant Marty Kimnach. In Marty Kimnach's action against Clark, the jury found for defendant Clark, and in Charles Kimnach's case against Clark, the jury found for plaintiff, Charles Kimnach and assessed his damages at $25,000.

The court entered judgments on the respective verdicts over the objections of the parties against whom they were rendered and exceptions were taken to the court's rulings but no objections or exceptions were taken to the form of the verdicts.

On the night of the accident Clark, an employee at the Air Station Officers' Club, Naval Operating Base, in Norfolk, Virginia, left the Club at 12:30 A. M. and proceeded to Virginia Beach to get his wife and return to their home which was about two miles west of the scene of the accident. Upon his arrival he found that she had secured a ride home with a friend and Clark then proceeded on towards home. He was operating a 1951 Lincoln sedan in a westerly direction along Laskin Road at 1:30 A. M. and Marty Kimnach was operating a new Ford station wagon in an easterly direction along the same road. Charles Kimnach, a Ford dealer, was riding in the front seat beside his wife. The station wagon she was driving was a company car kept for her use but her husband had driven it to the city limits where she had taken the wheel. She and Kimnach had spent the evening with friends in Norfolk and each had taken one high ball before dinner, but there was no evidence that they were not normal at anytime. Laskin Road (Highway 164) is a blacktop road, consisting of one eastbound and one westbound traffic lane separated by the usual white line, and wide shoulders border each side of the highway. At

the location of the accident there is a long curve bending to the left when proceeding westwardly. This curve did not interfere with the vision of the drivers for some distance each way. No other traffic was moving in that area when the collision occurred.

All occupants of both vehicles were injured in the collision but neither Clark nor Charles Kimnach was rendered unconscious. Marty Kimnach was rendered unconscious and remained in that condition for four or five days. She was disoriented thereafter for several weeks and had no recollection as to how the accident occurred.

There were no eye-witnesses to testify about the accident other than Clark and Charles Kimnach, and their evidence was conflicting as to the point on the highway where the cars collided. Clark and Kimnach each testified that his car was on the proper side of the highway before and at the time of the collision. Clark said that his speed was between 20 and 25 miles an hour; that he first saw the Kimnach car when it was 40 to 50 feet from him; that the Kimnach car's lights were bouncing on Clark's side of the road; that he (Clark) did not turn in either direction and that before he could effectively apply his brakes the cars collided. Charles Kimnach testified that his car was in good mechanical condition; that Marty Kimnach was driving between 40 and 45 miles an hour; that he first saw the lights of Clark's car about 200 feet before the accident and within one or two seconds the lights were right in front of him and the impact occurred on the south lane of the road in which they were travelling. He further testified that after the accident traffic was forced to leave the highway on the north in order to pass the wrecked cars.

Trooper L. A. Hackworth, the first officer to arrive at the scene, found the Clark car straddling the dividing line of the highway and headed in a westerly direction. According to him the Kimnach vehicle was in the eastbound lane with its front end on the shoulder and headed in an easterly direction. He also testified there was considerable debris on the road and that there was a tire mark, beginning on the shoulder of the westbound traffic lane 165 feet west of the debris and ending at the center line of the highway "where the debris started."

Trooper R. F. Coffelt and Sergeant R. K. Halstead testified they found debris which was centered just north of the line dividing the two lanes and they also observed the tire mark which lead to the debris. Halstead estimated the length of the mark to be 200 feet but Coffelt could make no estimate of its length. Neither officer

made any record of the accident and stated they did not know what car made the tire mark. Charles Kimnach denied that the tire mark was made by his car.

Photographs of the vehicles involved indicate that the vehicles were badly damaged and received more of a head-on blow rather than a sideswipe.

In the case of plaintiff Clark v. Marty Kimnach and Charles Kimnach (Record No. 4633) which resulted in a judgment in favor of both defendants the question presented in this appeal are

"1. Whether the Court erred in refusing certain instructions offered by the plaintiff, Elton Lee Clark, and in granting certain instructions offered by the defendant Marty Kimnach.

"2. Whether the Court erred in consolidating this action for trial with two other separate actions and in so trying all three actions before one jury.

"3. Whether the Court erred in rendering judgment in favor of the defendants, Marty Kimnach and Charles Kimnach when there was no verdict of the jury as to Charles Kimnach."

In the case of Charles Kimnach, plaintiff against Clark (Record No. 4632) which resulted in a verdict and judgment in the sum of $25,000 for Kimnach the questions presented in this appeal are

"1. Whether the Court erred in refusing certain instructions offered by the defendant, Elton Lee Clark, and in granting certain instructions offered by the plaintiff, Charles Kimnach.

"2. Whether the Court erred in consolidating this action for trial with two other separate actions and in so trying all three actions simultaneously before one jury."

In the case of Marty Kimnach v. Clark (Record No. 4634) which resulted in a verdict for the defendant, the errors assigned by Marty Kimnach are that the court should have stricken Clark's evidence or set the verdict in his favor aside because it was contrary to the law and the evidence.

[■ Clark places emphasis on his contention that either instruction P-1 or P-2 should have been granted on the ground that the only issue for the jury was which of the two vehicles was on the wrong side of the road, both he and Kimnach having testified that their respective cars were on the proper side when the collision occurred.

Instruction P-1 follows:

"The court instructs the jury that if you believe from a preponderance of the evidence that, at the time of the accident, the Kimnach

car was on the wrong side of the road, you shall find your verdict for Mr. Clark against Marty Kimnach. If you believe from a preponderance of the evidence that, at the time of the accident, the Clark car was on the wrong side of the road, you shall find your verdict for Mr. and Mrs. Kimnach against Mr. Clark. If you are unable to determine from a preponderance of the evidence, which car was on the wrong side of the road, then none of the parties are entitled to recover."

Instruction P-2 is similar to instruction P-1 with the exception that the last sentence in P-1 is omitted.

Both instructions are finding instructions and on one issue alone. They deprived the jury of the right to consider any other negligence of the operators which might have efficiently contributed to the accident. Under the evidence the jury could have concluded that Clark did not have his car under reasonable control; that the Kimnach car was on Clark's side of the road at the time of the accident but that Clark was also guilty of negligence which efficiently contributed to cause the accident in that he did not change the course of his car, or that he failed to keep a proper lookout since he did not see the Kimnach car until it was 40 to 50 feet from him when he should have seen it at a greater distance and in time to stop, slow down or drive to his right on the shoulder and thus attempt to avoid collision. Charles Kimnach saw the Clark car at a distance of 200 feet before the collision, and there is no explanation why Clark should not have then seen Kimnach's car. Assuming that Clark was on his side, he was not released from the duty to exercise due care and ordinary circumspection to avoid injury to himself and others. *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 618, 194 S. E. 683.

The jury evidently did not think it was simply a question of which driver was negligent, for the verdicts in their original form stated that both drivers were guilty of negligence which contributed to the accident.

Instruction P-2a as given in lieu of P-1 or P-2 follows:

"The Court instructs the jury that if you believe from a preponderance of the evidence that, at the time of the accident, the Kimnach car was on the wrong side of the road and that this was the sole proximate cause of the accident, you shall find your verdict for Mr. Clark against Marty Kimnach and shall not allow either Mr. Kimnach or Mrs. Kimnach to recover against Mr. Clark."

We think this was a proper instruction to give in lieu of P-1 or P-2.

Instructions P-1 and P-2 unreasonably limited the issue and were properly refused.

Refused Instruction P-6 follows:

"The Court instructs the jury that Mr. Clark had a right to assume that no oncoming automobile would be operated on his side of the highway, and that if so operated it would be removed therefrom in time to allow him to proceed in safety. And Mr. Clark had a right to rely on this assumption unless and until in the exercise of ordinary care the contrary should have appeared to him."

Counsel for the Kimnachs objected to the granting of this instruction. They contend that the instruction told the jury that the court was ruling as a matter of law Clark was on his proper side of the highway and inferred that Clark, while in his proper lane, saw the Kimnach car approaching on its improper side of the highway.

The court offered to grant P-6 by amending it to read "The Court instructed the jury that the driver of an automobile had a right to assume that no oncoming automobile would be operated on his side of the highway."

Instruction P-6 as tendered was not applicable under the evidence in this case. Clark testified that he did not see the Kimnach car until it was between 40 and 50 feet from his vehicle, while Charles Kimnach stated he saw the Clark car for a distance of approximately 200 feet. No reason is given by Clark for his nonobservance of the oncoming car until it was so close to him. The assumption referred to in P-6 did not relieve him of the duty of lookout. The jury had a right to conclude that in the exercise of ordinary care Clark should have seen the Kimnach vehicle sooner than he did. He could not excuse his failure to look by relying on an assumption that no oncoming automobile would be operated on his side of the highway.

Clark cites *Brown* v. *Vinson, Adm'r*, 198 Va. 495, 499, 95 S. E. 2d 138 in which the court stated:

"Prior to the accident, Brown, seeing Vinson some distance from him on the wrong side of the road, was justified in assuming that he would comply with the law and return to his proper side of the highway. This is true regardless of how far a vehicle may be viewed on the wrong side of the highway, and the presumption continues so long as reasonable time remains for the vehicle being improperly operated to return to its proper lane."

In the cases at bar, Clark did not see the Kimnach vehicle until it was 40 to 50 feet from him. A reasonable time did not remain for

the Kimnach vehicle to return to its proper lane; therefore, Clark was not entitled to the presumption that the Kimnach vehicle would return to the proper lane. We find no error in refusing instruction P-6 as offered, or in granting instructions K-1, 3-K and K-5 tendered by Marty Kimnach. These latter three instructions merely told the jury upon whom the burden of proof rested on the issues of negligence and contributory negligence and what duty was imposed upon Clark to keep a reasonable lookout for other vehicles. The jury was fairly instructed on the issues involved. .

■ Clark contends that the court committed prejudicial error in consolidating the actions for trial. He points out that prior to adoption of the Rules of Court in 1950, the Judicial Council and this court made a study of the Federal Rules of Civil Procedure, which specifically empower consolidation of cases for trial and that this court did not adopt such a provision in its Rules. He further says that if the Kimnachs desired to have their claims against him tried along with his motion for judgment, they should have complied with Rule 3:8 and filed counterclaims within the twenty-one days provided. In such event the court in its discretion could order a separate trial of the causes of action asserted in the counterclaims. Finally he states that, assuming the trial court had the discretion to order a consolidation which he denies, these cases were improperly consolidated.

Clark's medical expenses were less than $1,000. Marty Kimnach's medical expenses were approximately $5,000, and Charles Kimnach's medical bills were approximately $1,000. Clark does not contend that the verdict awarded Charles Kimnach was, as a matter of law, excessive, but he does assert that it is probable that the jury believed that Charles Kimnach had paid or would be called upon to pay his wife's medical expenses, since he testified as to expenses incurred in connection with her treatment. He further alleges that if the trial court had not consolidated these actions such a probability would have been obviated, and having ordered consolidation it operated prejudicially in his case and was harmful to his defense of Charles Kimnach's claim against him.

In matters of procedure, the trial court has a wide discretion, but caution should be exercised to see that a party litigant will not be prejudiced before the court orders a consolidation of cases. If the trial court is in doubt as to the advisability of a consolidated trial, no such order should be entered. These three separate actions which arose out of the same accident presented the same basic issues and

involved the same evidence and parties. No difficult, unusual or novel issues were involved and separate trials would have consumed more time and incurred additional expense. There would be a repetition of the evidence except as to damages. Clark was given the right to open and close his case as if his action had been tried separately.

In *Giguere* v. *Yellow Cab Co.*, 59 R. I. 248, 250, 195 A. 214, which involved the consolidation of two actions for trial only, the court said:

"The practice of consolidating cases for trial, or trying cases together, is not new in this state, although the question of when such consolidation is proper has not been directly decided by this court. The consolidation of cases for trial only does not operate as a merger of the different cases into one, but merely permits them to be tried together before the same justice or jury to avoid unnecessary delay and expense in the administration of justice. The causes of action remain distinct throughout such a trial and every legal right is preserved to the respective parties as fully as if the cases had been tried separately. The distinction between such a consolidation of cases for trial only, and a complete and actual consolidation or merger of separate causes of action into only one cause, or the English consolidation practice in use in some jurisdictions in this country, is not always clearly kept in mind or adhered to in some of the decided cases, thereby causing apparent confusion in the law relating to this question.

"Our review of the authorities on this point convinces us that, independent of statute, by which the matter is regulated in some jurisdictions, the trial court has inherent power to order that several cases pending before it be tried together where they are the same nature, arise from the same act or transaction, involve the same or like issues, depend substantially upon the same evidence, even though it may vary in its details in fixing responsibility, and where such a trial will not prejudice the substantial rights of any party. Whether two or more cases should be tried together is a question which must necessarily be left to the sound discretion of the trial court, after application of the foregoing principles, and its action in this connection will not be revised or interfered with unless its discretion was clearly abused. 64 C. J. 35. On the issue of consolidation for trial, the following cases present situations somewhat similar to the one existing in the instant case. *Burke* v. *Hodge*, 211 Mass. 156; *Sullivan* v. *Boston Elec. Light Co.*, 181 Mass. 294; *Keep* v. *Indianapolis & St. Louis R. R. Co.*,

10 Fed. 454. See also *Azinger* v. *Pennsylvania R. R. Co.*, 262 Pa. St. 242; *Reid* v. *Nichols*, 166 Ky. 423; *McAllister* v. *Drislane*, 266 N. Y. Supp. 809." See also *Shivers* v. *Carlson*, 178 Kan. 170, 283 P. 2d 450.

We cannot deal in probabilities as to what the jury may have considered in fixing Charles Kimnach's damages. Separate damage instructions (K-6 and K-7) were given on behalf of the Kimnachs and this court cannot say without proof to the contrary that the jury did not abide by them. The trial court had inherent power to consolidate for trial the cases at bar and in so doing, Clark was not prejudiced. The court did not abuse the discretion with which it was clothed.

■ At the conclusion of all the evidence, on motion of Charles Kimnach, the court struck the evidence as to him in the case of Clark v. Marty Kimnach and Charles Kimnach. The jury thereupon returned a verdict in the following words: "We, the jury, upon the issue joined, in the case of Elton L. Clark against Marty Kimnach, find for the defendant Marty Kimnach." The verdict was silent as to Charles Kimnach. Whereupon judgment was entered denying Clark a recovery.

Clark maintains that there was no verdict of the jury in regard to Charles Kimnach, and consequently there was no basis for entry of a judgment in his favor. He relies upon *Heath* v. *Mooers*, 171 Va. 397, 199 S. E. 519. In that case after plaintiff had rested, the court, over her objection, sustained defendants' motion to strike her evidence. The jury was discharged without rendering a verdict and the court entered final judgment for the defendants. We held that the trial court had no power or authority to enter a final judgment upon the issue joined without a jury verdict. It will be noted that this opinion was rendered on November 22, 1938, some years before the revised and more comprehensive rules were adopted which became effective on February 1, 1950.

Rule 3:20 follows: "Either party may file a motion for summary judgment at any time after the parties are at issue. If it appears from the pleadings, the orders, if any, made at a pretrial conference, and the admissions, if any, in a deposition that the moving party is entitled to a judgment, the court shall enter judgment in his favor. Summary judgment shall not be entered if the amount of damages or any other material fact is genuinely in dispute."

In moving to strike Clark's evidence Charles Kimnach, in effect, was asking for a summary judgment. There was no evidence tending

to prove agency or that the relationship of master and servant existed between Marty Kimnach, the driver, and Charles Kimnach. A verdict against him could not stand.

Counsel for Clark in opposing the motion to strike said: "if your honor please, ordinarily I would agree that the motion is well made, except for this one thing. Whether it is strong enough or not, I am frank to say I don't know. I am inclined to think it is. The evidence is from Kimnach that they had been to this party in Norfolk; that he drove through traffic to the outskirts or to the city limits, and that then Mrs. Kimnach drove because, as he said, he did not like to drive at night. He did not elucidate on that. Whether it was because of his eyesight or something of that kind, we don't know. We do know that the reason she drove, according to him was that he did not like to drive at night.

"I submit that the jury might find from that that under those circumstances she was driving as his agent.

To say the least, counsel was in doubt as to the soundness of his grounds of opposition to the motion to strike. We also observe that instruction K-2, which told the jury that there was no evidence in this case from which they could conclude that Charles Kimnach was guilty of negligence which proximately caused or contributed to the accident was given without objection or exception and that Clark did not object to the omission of Charles Kimnach's name from the verdict. There was no material fact *genuinely* in dispute in so far as Charles Kimnach's liability was concerned. For the reasons stated, we find no reversible error in rendering judgment in favor of the defendants Marty Kimnach and *Charles Kimnach* even though the verdict was silent as to *Charles Kimnach*.

In the case of Marty Kimnach, plaintiff v. Clark, defendant (Record No. 4634) Marty Kimnach moved to strike the defendant's evidence and to set aside the verdict because it was contrary to the law and without credible evidence to support it. We find no error in the assignments of error based upon these motions. There was sufficient evidence of negligence on the part of Marty Kimnach to carry that question to the jury and they were instructed on that issue without objection on the part of Marty Kimnach.

The three judgments appealed from are

*Affirmed.*