**Ida M. KALE and Lester E. Kale,
Appellants,**

v.

**Martin F. DOUTHITT, and Automatic
Sprinkler Corporation of America,
Appellees.**

No. 7933.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 23, 1959.

Decided Jan. 22, 1960.

Israel Steingold, Richmond, Va. (Steingold & Steingold, Richmond, Va., on brief), for appellants.

M. Wallace Moncure, Jr., Richmond, Va. (Moncure & Cabell, Richmond, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and BUTLER, District Judge.

BUTLER, District Judge.

This action was brought by plaintiffs to recover damages for personal injuries sustained in the collision of two automobiles. At the conclusion of all the evidence, defendants renewed their motion for a directed verdict on the ground that there was not sufficient evidence of actionable negligence on the part of the defendants to be submitted to the jury. The motion was allowed, and the plaintiffs appealed.

The principal issues involved in this appeal are a question of last clear chance and also whether the testimony of an expert witness in reconstructing the accident and estimating the speed of the defendant's automobile prior to the collision was competent and of sufficient probative value to raise an issue for the jury.

The salient facts developed in the evidence are as follows:

A collision occurred on August 5, 1957, at 4:00 o'clock p. m., on U. S. Highway No. 301, in Caroline County, Virginia, about three and one-half miles north of Hanover Courthouse, between a 1954 Plymouth Sedan owned and operated by the plaintiff, Lester E. Kale, accompanied by his wife and co-plaintiff, Ida M. Kale, and a 1957 Chrysler Imperial Sedan owned and operated by the defendant, Martin F. Douthitt, acting within the scope of his employment as agent and employee of the defendant, Automatic Sprinkler Corporation of America.

The highway at the point of collision runs in a north-south direction. It is "rolling and hilly" and is straight for approximately twenty miles north and approximately one-quarter mile south. The highway was paved with asphalt 20 feet wide, with a broken white line down the center, separating the highway into two lanes 10 feet wide. The shoulders were constructed of small, loose gravel. The shoulder on the west was 12 feet 5 inches wide, and the shoulder on the east 11 feet 10 inches wide. On the east side of the road there was a dirt embankment 5 feet 8 inches from the edge of the shoulder. The speed limit was 55 miles an hour. The weather was clear; the surface of the road was dry, and the sun was shining.

The plaintiffs were severely injured and both suffered loss of memory as a result thereof for a short period prior to the accident and for about three days thereafter, and neither had any recollection of the accident.

There were only two eye-witnesses: the defendant Douthitt, and Billy Dean Massie, an occupant of the defendant's automobile. The evidence disclosed that the defendant Douthitt was travelling

south and the plaintiffs were travelling north. Near the point of collision the road slopes downward between the crests of two hills forming a valley of sufficient depth that an automobile in the valley and an automobile 100 feet past the crest of the hill approaching from the north are not visible to the respective drivers.

As the defendant Douthitt, travelling on his proper side of the road, drove over the crest of the hill he saw the plaintiff's car 100 to 200 feet directly in front of him sliding sideways at an angle across the southbound lane in which he was travelling. The defendant immediately applied his brakes and pulled to the right, leaving skid marks 50 feet in length to the point of impact on the extreme right-hand side of the defendant's lane of travel. There were no brake marks left by the plaintiff's car. Douthitt testified that shortly before the accident occurred he was driving between 45 and 55 miles per hour. The witness Massie testified that he was a passenger in the defendant's car, travelling between 45 and 55 miles an hour, and that when they came over the crest of the hill and first saw the plaintiff's automobile, it was travelling at a speed of 45 to 55 miles an hour, and was overtaking and passing another car proceeding northwardly. There was evidence that at the point of impact there is visibility for 500 feet.

Photographs and testimony tend to establish that the left front fender of the defendant's automobile struck the left front door of the plaintiff's automobile, with the damage extending along its left side. After the collision the defendant's car came to rest in the southbound lane with the front headed northeast and the right corner of the bumper about 10 inches west of the center line. The plaintiff's car came to rest on the east shoulder, opposite defendant's automobile, with the front headed northwest and the rear end against the dirt embankment. There were no marks on the road indicating the path of the plaintiff's car after leaving the point of impact. Before the photographs were taken which were introduced in evidence, the defendant's automobile was moved backwards onto the west shoulder of the road.

The plaintiffs contend that their damages were proximately caused by the negligence of the defendants in the following respects: operating the automobile in a reckless manner and at an unlawful rate of speed, greater than was reasonably proper under the circumstances, failure to keep the vehicle under proper control, failure to maintain a proper lookout and failure to use ordinary care.[1] The plaintiffs also contend that the defendants had a last clear chance to avoid the collision.

The uncontradicted evidence establishes the fact that the plaintiffs were overtaking and passing a car going in the same direction, and that when the collision occurred the plaintiff's car was skidding sideways on the left side of the road and in the lane of travel of the defendant's oncoming automobile.

Therefore, it becomes necessary to consider the reciprocal rights and duties of motorists, under Virginia law, when meeting and passing oncoming vehicles.

In Virginia it is provided by statute that motorists on highways of sufficient width shall drive their vehicles upon the right half of the highway unless it is impracticable to do so.[2] The

---

1. The pertinent sections of the Va.Code of 1950 are as follows:

§ 46.1–190 " * * * A person shall be guilty of reckless driving who shall:

"(a) Drive a vehicle when not under proper control * * *;

  *    *    *    *    *

"(h) Exceed a reasonable speed under the circumstances and traffic conditions existing at the time regardless of any posted speed limit;

"(i) Drive a motor vehicle upon the highways of this State at a speed in excess of 75 miles per hour; except as provided in subsection (1) of this section."

2. Va.Code of 1950, § 46.1–203. "Drive on right side of highways.—Except as otherwise provided by law upon all highways of sufficient width the driver of a vehicle shall drive the same upon the right half of the highway, unless it is

statute recognizes certain exceptions relating to overtaking and passing.[3] Obviously, this law was enacted to give protection to oncoming vehicles in their proper lane of travel.[4] It is specifically provided by statute that "drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other, as nearly as possible, at least one-half of the main traveled portion of the roadway."[5]

The Virginia law further provides that it is reckless driving to overtake and pass another vehicle while approaching the crest of a hill where the driver's view is obstructed.[6]

■ In the instant case, the plaintiffs contend that when they collided with the defendant on the left of the highway they were legally attempting to overtake and pass a car proceeding in the same direction, as authorized by statute. The statutory duty not to drive on the left side of the center line of the highway in passing "unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety"[7] imposes a duty on the driver of the overtaking vehicle to yield the right of way to any approaching vehicle while in its lane of travel.

■■ It may be presumed that the drivers of approaching automobiles can observe each other at the same instant, and that each has the same distance and time within which to avoid a collision. Although the law requires that the driver of a vehicle on the right side of the road, observing a vehicle approaching on the wrong side, shall exercise due care to avoid a collision, he has the right to assume that the driver of the approaching vehicle will obey the law and return to his side of the highway in time to avoid a collision.[8]

■ Applying the rules to which we have referred, it is apparent that the plaintiff Kale was guilty of negligence which proximately caused the collision. He undertook to overtake and pass another vehicle proceeding in the same direction, while in a valley or blind spot in the road and where he could neither see nor be seen by oncoming traffic for a sufficient distance to complete the passing in safety.

Under such circumstances it was his duty, upon observing the defendant's oncoming automobile, to return to the right side of the highway and give to the defendant, as nearly as possible, at least one-half of the main-travelled portion of the roadway.

---

impracticable to travel on such side of the highway and except when overtaking and passing another vehicle, subject to the provisions applicable to overtaking and passing set forth in §§ 46.1–208, 46.1–210, and 46.1–212."

3. The pertinent exception is as follows: Va.Code of 1950, § 46.1–212. "Limitations on privileges of overtaking and passing.—(a) The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety."

4. Hamilton v. Glemming, 187 Va. 309, 46 S.E.2d 438.

5. Va.Code of 1950, § 46.1–207.

6. Va.Code of 1950, § 46.1–190, reads in part as follows:
"* * * A person shall be guilty of reckless driving who shall:
* * * * *
"(b) While driving a vehicle, overtake and pass another vehicle proceeding in the same direction, upon or approaching the crest of a grade or upon or approaching a curve in the highway, where the driver's view along the highway is obstructed, except where the overtaking vehicle is being operated on a highway having two or more designated lanes of roadway for each direction of travel or on a designated one-way street or highway;"

7. See Note 3, supra.

8. Johnson v. Kellam, 162 Va. 757, 175 S.E. 634, cited in note, 95 A.L.R. 578; Whipple v. Booth, 155 Va. 413, 154 S.E. 545; Brown v. Vinson, 198 Va. 495, 95 S.E.2d 138.

Plaintiffs contend that this is "the classic case of a helpless plaintiff, stuck on the wrong side of the road, the reasonable inference being that he could not return to his side of the road until the car he was trying to pass had moved ahead". He argues that "until such car had moved ahead, his return to his own side of the road was blocked".

The plaintiffs rely on Monday v. Clynes, 6 Cir., 1954, 212 F.2d 802; Greear v. Noland Co., 197 Va. 233, 89 S.E. 2d 49; and Clark v. Kimnach, 198 Va. 737, 96 S.E.2d 780.

The doctrine of last clear chance, as applied in Virginia, is stated in the case of Greear v. Noland Co., supra, as follows:

"Where the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw, or should have seen, him in time to avert the accident by using reasonable care. Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, his peril in time to avert the accident by using reasonable care." [197 Va. 233, 89 S.E.2d 53.]

Here the defendant Douthitt, proceeding in his proper lane of traffic, drove over the crest of a hill and saw the plaintiff's automobile skidding toward him on the wrong side of the highway at a distance of 100 to 200 feet. Douthitt was confronted by a sudden emergency created by the negligence of the plaintiff Kale, and he is not guilty of negligence if he exercises the care of a reasonably prudent person under like circumstances. Douthitt did not know what direc-tion the skidding car would take, nor what course he should pursue in an effort to avoid the collision. He instantly applied his brakes and pulled his car to the extreme right edge of his driving lane. His action was in compliance with the statutory requirement that vehicles meeting from opposite directions should drive to the right. We cannot say that the defendant failed to exercise the care of a reasonably prudent man under the circumstances, and we hold that the doctrine of last clear chance is not available to the plaintiffs under the facts of this case. Brown v. Vinson, 198 Va. 495, 95 S.E.2d 138.

Finally, the plaintiffs contend that the testimony of an expert witness establishes the fact that the speed of the defendant's automobile prior to the collision was greatly in excess of the limit allowed by law. The plaintiffs offered as an expert witness Clarence S. Bruce, who testified that he is a "traffic accident analyst"; that he worked in the automotive laboratory at the National Bureau of Standards for about thirty years, and is the author of the Table of Stopping Distances and Reaction Time used in many states, and that he had many years of experience in connection with the reconstruction of speeds and the causes of accidents. The witness examined the scene of the accident the day before the trial, approximately eighteen months after the accident. He also examined the photographs in evidence showing the highway, the skid marks and debris at the scene of the collision, and the damaged automobiles on opposite shoulders of the road.

On the basis of the photographs and certain assumed facts contained in a hypothetical question, he undertook to reconstruct the accident and express an opinion as to the speed of the Douthitt automobile at the time the brakes were applied.[9] The hypothetical question as-

9. The witness, in explanation of his method of reconstructing speeds, testified: " * * if you take two cars and run them together, they will absorb all the energy that is in the other, and the coefficient of restitution will give you the amount of energy that was not used in crushing or bending, because that is sprung back * * If two vehicles come together and you know the energy of one during the im-

sumed: (1) a highway approximately 21 feet wide with lanes about 10 feet wide, relatively level and straight, with a slight upgrade toward the north; (2) hard-surface asphalt pavement, known as F-1 black top; (3) skid marks 50 feet in length made by the Douthitt car approaching from the north; (4) the Kale car approaching from the south came into the southbound lane of traffic at a speed between 45 and 55 miles an hour; (5) the vehicles collided at a point indicated in the photographs by the skid marks and debris; (6) the Kale car came to rest against a bank 5 feet 10 inches from the edge of the east shoulder, which is 11 feet and 10 inches wide; (7) the Douthitt car came to rest either at a point 10 inches west of the white center line, or on the west shoulder as shown in the photograph.

"Q. Can you, with those statements which I have given you, estimate mathematically the speed at which the Chrysler Imperial [Douthitt's car] was travelling at the time the deceleration of that vehicle began?

"A. Yes, sir."

Upon objection by the defendants, the witness stated that the assumed variations with respect to the speed of the Kale car, and the location of the Douthitt car after the accident, would give different answers which he would state in the alternative.

The witness was asked to assume further: (8) the Kale car with 300 pounds in it [150 pounds for each occupant] weighs 3,438 pounds, and the Douthitt car with 300 pounds in it weighs 5,180; (9) the Kale car was 16 feet long, and (10) the Douthitt car had a 60-inch wheelbase and an overall width of 6 feet 6 inches.

Upon the assumed facts the witness expressed the following opinion:

"The car [Douthitt's], to do what it did—stop the Plymouth [Kale's] going 45 miles an hour, drive it back as shown there—would have had to have a minimum velocity of 85.3 miles per hour. Now, I can compute the other one * * * with the speed of the Kale car at 50 miles an hour, the speed of the Douthitt car would be somewhere in the neighborhood of 87 or 88, and if the speed of the Kale car had been 55, the speed of the Douthitt car would be 90 miles an hour."

The pertinent rules applicable to opinion testimony of experts are stated in 20 Am.Jur., Evidence, §§ 776 and 779, as follows:

"In general, it may be said that there are two distinct classes of cases in which expert testimony is admissible. In one class are those cases in which the conclusions to be drawn by the jury depend on the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subjects in question. In the other class are those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend on professional or scientific knowledge not within the range of ordinary training or intelligence. The distinction between these two classes of cases is self-evident. In the former class of cases, the facts are to be stated by the experts and the conclusion is to be drawn by the jury. In the other group of cases, the expert states the facts and gives his

---

pact, all you have to do is get the amount of energy that passes through the impact and the (sic) apply the coefficient of restitution to that and you get the speed at the beginning of the impact. Then, if you had some skid marks leading up to the impact, you could then apply the energy of the skid marks and find the speed at which the brakes were applied * * * If I can look at the surface of the road, I can tell the coefficient of friction of that road, and then the distance that the center of gravity of a car moves after the impact, I can get the speed— the minimum speed at which you have to drive that automobile to make it go where it went * * * [In order to compute the rate of speed of an automobile prior to the collision], I have to know how far the vehicles went after impact."

conclusion in the form of an opinion which may be accepted or rejected by the jury * * *

"Expert opinion testimony, when offered through the medium of a qualified witness, may be given concerning any subject, relevant to the matters in issue, in which a person may become specially learned or skilled or acquire special proficiency, subject, however, to the qualification that an expert's opinion cannot be received if it amounts to a conclusion of law. * * * speaking generally, expert testimony is admissible upon a matter regarding which there is not common knowledge, where the court or jury may be aided or educated by the expert views and opinions of men experienced in some particular art, science, trade, or business. Such testimony is not, on the other hand, admissible on matters of common knowledge even though offered through the medium of a witness having superior knowledge."

■■ Generally, a hypothetical question must assume all facts disclosed by the evidence material to the theory of the case as viewed from the side propounding the question. A question which assumes any material fact not supported by the evidence is inadmissible. A question which omits any material fact essential to the formation of a rational opinion is likewise incompetent. The facts upon which the expert bases his opinion or conclusion must permit reasonably accurate conclusions as distinguished from mere guess or conjecture. 20 Am.Jur., Evidence, §§ 788, et seq.

The Supreme Court of Appeals of Virginia has held that a hypothetical question, designed to elicit the opinion of an expert witness on an assumed state of facts, is properly excluded by the court where it was not based upon the evidence in the case, and it was incomplete in that it did not take into consideration all of the factors which were necessary for an intelligent answer. City of Portsmouth v. Culpepper, 192 Va. 362, 64 S.E.2d 799.

In the instant case, we think it is a valid ground of objection that the hypothesis of the question omitted material facts essential to an intelligent opinion as to the speed of the defendant's car. The witness referred to the "coefficient of friction" as one of the factors in the mathematical formula which he used to calculate the speed of the Douthitt car. In general, friction depends largely on weight as affected by the angle of incline, and on the nature and condition of the two surfaces in contact. As to the factor of weight, the witness assumed that each occupant of each car weighed 150 pounds with no evidence to support the assumption; there was no evidence and no assumption with respect to the weight of luggage on either car, if any. The hypothetical question assumed that the road had "a slight upgrade toward the north". It is not shown whether this grade is 1° or 10°, and this has an important bearing on the coefficient of friction. The factors relating to the two surfaces in contact depend on the nature and condition of the road and the tires of both cars. For instance, the coefficient of friction of a new tire on a dry road may be as high as 0.80. The coefficient of a smooth tire on a wet road may be as low as 0.05. Thus, the two factors could vary as much as 16 times. There was no evidence with respect to the condition of the tires on either car, and no assumption with respect to whether the road was wet or dry.

Other material factors not disclosed by the evidence or assumed in the question are (1) the angle of the Kale car at the moment of impact; (2) the amount of energy used or expended in creating the damage to both cars, which depends on the materials used and the manner of their construction and involves an application of the principles of "elasticity"; and (3) the distance the vehicles went after the impact and related factors—whether, for instance, the brakes of the Kale car were applied

or if the wheels were locked as a result of the collision; whether the Kale car came to rest by rolling on its wheels, or by skidding sideways, or by hurling through the air; the amount of friction encountered by the two vehicles after their impact and before they came to rest, and the velocity of the Kale car when it struck the dirt embankment.

In the case of Fishman v. Silva, 116 Cal.App. 1, 2 P.2d 473, 474, the Court said:

"It is needless to add, as in all such cases there is presented a wide field for argument, the main theme of which is physical facts and the so-called immutable laws of physics. Contentions based on these foundations are usually not convincing, strange as it may seem, for the simple reason that in partisan presentation there is an ever-present temptation to forget essential facts which do not fit in. For instance, where it is argued that, where there is a contact of two bodies in a given position, the direction of the applied force will control the position of the bodies after the impact, any rule or law, in the abstract, will be found of little value when we have the additional factors of each body in motion and controlled by independent agencies. Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors. Among these variants we may class indefinite rate of speed, condition of the highway, judgment or lack thereof in the drivers, a direct blow or a glancing one, and the balance or equilibrium of each car at the time of impact." [10]

We are of the opinion that the testimony of the expert witness relating to the speed of the defendant's car is incompetent.

The plaintiffs have failed to offer any evidence of actionable negligence on the part of the defendants to be submitted to the jury.

The judgment appealed from is Affirmed.

---

10. Venable v. Stockner, 200 Va. 900, 108 S.E.2d 380; Richter v. Seawell, 183 Va. 379, 32 S.E.2d 62; Waller v. Southern California Gas Co., 170 Cal.App.2d 747, 339 P.2d 577; Moniz v. Bettencourt, 24 Cal.App.2d 718, 76 P.2d 535; Linde v. Emmick, 16 Cal.App.2d 676, 61 P.2d 338.