596 F.2d 93
 Marlene J. BROCK, Individually and as Widow of Richard I.
Brock, Deceased, and on behalf of Michael I. Brock, Debra J.
Brock, Richard D. Brock and Patrick S. Brock, and Donna M.
Kresheck, Individually and as Widow of Leonard W. Kresheck,
Deceased, and on behalf of Leon G. Kresheck, Lori A.
Kresheck and Joan M. Kresheck, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 78-1155.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1979.
Decided April 4, 1979.
 
 1
 George E. Farrell, Washington, D. C. (Timothy J. Healey, Healey & Farrell, Washington, D. C., on brief), for appellants.
 
 
 2
 Michael F. Hertz, Atty., App. Section, Civil Division, Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., William B. Cummings, U. S. Atty., Alexandria, Va., Leonard Schaitman, Attorney, App. Section, Civil Division, Dept. of Justice, Washington, D. C., on brief), for appellee.
 
 
 3
 Before HALL and PHILLIPS, Circuit Judges, and THOMSEN,* Senior District Judge.
 
 
 4
 THOMSEN, Senior District Judge.
 
 
 5
 Plaintiffs in these actions against the United States under the Tort Claims Act for the alleged wrongful death of the pilot and co-pilot of a TWA aircraft which crashed during an instrument approach to the Dulles International Airport (Dulles) on December 1, 1974, appeal from a judgment for the defendant following a non-jury trial. The district judge filed a careful opinion in which he made findings of fact and conclusions of law in favor of the government on the issues of primary negligence, contributory negligence and last clear chance, based in part upon a stipulation of uncontested facts and in part upon testimony, depositions and exhibits received at the trial. We find his findings of fact and conclusions of law on the issues of contributory negligence and last clear chance to have been clearly correct; it is therefore unnecessary for us to find whether there was any primary negligence on the part of the air traffic controllers at Dulles or any other person for whose negligence the government would have been responsible.
 
 
 6
 The flight, which originated at Indianapolis with a stop at Columbus, had been scheduled to arrive at Washington National Airport, but because of bad weather was diverted to Dulles. The Washington Air Traffic Control Center told plaintiffs' decedents, both of whom were in the cockpit, that they should fly easterly 90o to intercept the Armel 300o radial (which leads to Dulles) at a point about sixty nautical miles northwest of Round Hill, Virginia. Round Hill is about eighteen nautical miles northwest of Dulles. That was done.
 
 
 7
 The parties stipulated that at approximately 11:09:22 AM (EST) the plane crashed into the west slope of Mount Weather, Clarke County, Virginia, at an elevation of 1669 feet, northwest of Round Hill and approximately twenty nautical miles from Dulles. It is not disputed that at 11:04:16, five minutes before the crash and while the plane was flying over a mountainous area northwest of Round Hill, the FAA controller at Dulles cleared the flight for approach to a specified runway at Dulles.
 
 
 8
 Both the pilot and the co-pilot were in the cockpit at all material times. Their conversation was recorded by the cockpit voice recorder, which was salvaged and offered in evidence. Both of them knew that they were not supposed to fly under 1800 feet at any time while they were on the initial approach course to which they had been assigned; they also knew from the Jeppeson Approach Chart, to which they referred about a minute and a half before the crash, that until they reached Round Hill a descent below 3400 feet might be hazardous. The chart also showed that there was a 1764 foot hill virtually on their course just northwest of Round Hill. The weather was bad and they were not able to see the ground.
 
 
 9
 The crash occurred at 11:09:22 AM. The cockpit voice recorder transcript shows that at 11:07:48 the pilot and the co-pilot discussed the 3400 foot figure on the chart. At 11:08:25 the altitude alert horn sounded, indicating that the plane had gone below the level at which it had been set; both men agreed that they should "get some power" on the plane; at 11:08:43 they noted that they "ought to see ground outside in just a minute." At 11:08:57 the altitude alert sounded again; one of the men said, "It was wanted to go right down through there;" and at 11:09:01 one of them said, "Must have had a hell of a down draft;" at 11:09:14, as they were approaching the ridge, the radio altimeter warning horn sounded; there was no immediate response, but at 11:09:20 one of the men said, "Get some power on" (to go higher); and at 11:09:22 there was the sound of impact. The plane crashed at 1669 feet, between fifty and seventy-five feet below the ridge line.
 
 
 10
 Whether or not the FAA controller had given them a clearance which they reasonably interpreted to permit them to descend to 1800 feet, they were clearly negligent in descending so far in such weather that they crashed at 1669 feet. Neither of them suggested that they should consult the FAA controller at Dulles, or that they should take protective action until it was too late. The finding of the district judge that both men were negligent was justified by the evidence. Under Virginia law, which controls the issue, contributory negligence is a bar to recovery unless the last clear chance doctrine requires a different result. Washington v. Schuyler, 433 F.2d 362 (4 Cir. 1970).
 
 
 11
 The Virginia law of last clear chance makes a distinction between the "helpless" plaintiff and the "inattentive" plaintiff. Greear v. Noland Company, 197 Va. 233, 89 S.E.2d 49 (1955); Simmers v. DePoy, 212 Va. 447, 184 S.E.2d 776 (1971). See also Kale v. Douthitt, 274 F.2d 476, 480 (4 Cir. 1960).
 
 
 12
 "Where the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw, or should have seen, him in time to avert the accident by using reasonable care. Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, his peril in time to avert the accident by using reasonable care." Greear v. Noland Company, 197 Va. at 233, 89 S.E.2d at 53.
 
 
 13
 The pilot and the co-pilot were not "helpless;" up to the last couple of seconds they were in a position where they could have pulled the plane up to an altitude above the ridge line and avoided the fatal crash. They were "inattentive" to their peril, of which they had received warnings from the chart and from the altitude alert horn; and they did not respond as quickly as they should have responded to the radio altimeter warning.
 
 
 14
 There remains the question whether the FAA controller at Dulles saw the peril of the plane in sufficient time for effective action. The district judge considered this question carefully in his opinion; he found that the FAA controller first observed the 2000 foot altitude reading of the plane at approximately the time of impact, too late to have done anything to avert the crash. This finding was supported by substantial evidence in the record considered as a whole, and justified the ultimate finding and conclusion of the district judge that there was no lack of ordinary care or violation of any duty owed the aircraft on the part of the air traffic controller after he saw the peril of the aircraft, and that "(t)he last clear chance to avoid this accident was had by the crew, not the controller. If the crew had only heeded one of the many warnings available to them and which they should have heeded, right up to the 11:09:14 alert warning, the crash could have been avoided."
 
 
 15
 Affirmed.
 
 
 
 *
 Of the District of Maryland, sitting by designation