Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

ALLSTATE INSURANCE COMPANY

v.   Record No. 021201

TIMOTHY L. WADE, ET AL.


ALVIN WAYNE SOWERS

v. Record No. 021209     OPINION BY JUSTICE ELIZABETH B. LACY
                                    April 17, 2003
TIMOTHY L. WADE, ET AL.


BRUCE WILLIAM DEGARMO

v. Record No. 021227

TIMOTHY L. WADE, ET AL.


                FROM THE CIRCUIT COURT OF PATRICK COUNTY
                      David V. Williams, Judge

     This is a consolidated appeal from a judgment awarding

compensatory and punitive damages for injuries suffered in an

automobile accident.  The issues involve whether the jury

should have received information concerning the potential

liability of a party's uninsured motorist insurance carrier,

whether consideration of the compensatory and punitive damages

issues should have been bifurcated, and whether the evidence

presented supported the compensatory and punitive damages

awards.

Bruce William DeGarmo and Alvin Wayne Sowers began drinking whiskey and beer around 5:00 p.m. on October 16, 1998. DeGarmo had four or five shots of bourbon whiskey and Sowers had three or four beers before the two men drove to an ABC store in Henry County. After purchasing a fifth of whiskey, the two men drove to an isolated road and drank the whiskey. The men returned to the ABC store and purchased a second fifth of whiskey which they also drank. While the details of the events that transpired over the next few hours are in conflict, the two men continued drinking and driving throughout the evening, ultimately winding up on a gravel road near a church shortly before 11:00 p.m.

When DeGarmo, the driver of the vehicle, stopped near the church, he left the driver's seat and told Sowers to drive. DeGarmo testified that he was "drunk" and "couldn't hardly hold [his] head up anymore." Sowers testified that he was also intoxicated at this point but, nevertheless, began driving DeGarmo's car down the curvy, country road. DeGarmo urged Sowers to "speed up" because DeGarmo wanted to get home. Sowers then increased his speed to 50 or 55 miles per hour. While in a blind curve, Sowers passed another vehicle and entered a second blind curve where he lost control of the vehicle, crossed into the oncoming traffic lane, and collided head-on with a vehicle driven by Cheryl S. Kiefer. Judith G.

2

Steele, Timothy L. Wade, and Ronald S. Steele were passengers in Kiefer's vehicle.

Following the accident, DeGarmo moved to the back seat of his vehicle, and Sowers moved to the passenger seat. The two men told the investigating officer that a third party was driving DeGarmo's vehicle but that he had "jumped out and run" after the accident. The investigating officer smelled a strong odor of alcohol around DeGarmo and Sowers, as did the emergency room physician who treated them. The emergency room physician testified that DeGarmo and Sowers said that they were traveling 70 miles per hour or more at the time of the accident. The blood alcohol levels of DeGarmo and Sowers were 0.179 and 0.264, respectively.

Kiefer, Judith Steele, and Wade each filed motions for judgment against Sowers and DeGarmo asserting that Sowers' negligent driving caused the accident and that DeGarmo negligently entrusted his car to Sowers.[1] Each plaintiff sought compensatory and punitive damages from both defendants.

Kiefer's uninsured motorist insurance carrier, Allstate Insurance Company (Allstate), entered an appearance in each case in its own name pursuant to Code § 38.2-2206(F). At a

---

[1] Ronald Steele also filed a motion for judgment against Sowers and DeGarmo, but his claim was settled prior to commencement of the trial and is not before us in these appeals.

pre-trial hearing, Allstate moved the trial court for permission to tell the jury that it was Kiefer's insurance carrier and to argue to the jury that an award of punitive damages would not serve the function of deterrence and punishment if Allstate, rather than the defendants, paid the award. The trial court denied Allstate's motion.

The cases were consolidated prior to trial. The morning of trial, Sowers and DeGarmo both admitted that they were negligent, that their negligence was a proximate cause of the plaintiffs' injuries, and that the plaintiffs were entitled to compensatory damages. The defendants moved to bifurcate the issues of compensatory and punitive damages and to exclude evidence of post-accident statements or conduct by the defendants.[2] The defendants also asserted that the allegations in the motions for judgment did not support an award of punitive damages.

The trial court denied the defendants' motions. The issues of punitive and compensatory damages were submitted to the jury. The jury found Sowers and DeGarmo jointly and severally liable for compensatory damages of $75,000 each for

---

[2] The defendants had previously sought bifurcation of the punitive damage issue from each of the four cases prior to their consolidation. In that request they sought a single hearing on that issue, arguing that they should not be exposed to four punitive damages awards for the same conduct. This request was also denied.

4

Wade and Kiefer and $100,000 for Steele. The jury also found DeGarmo liable for punitive damages of $5,000 to each of the plaintiffs. The trial court denied the defendants' motions to set aside the verdict and entered judgment on the verdict. We awarded appeals to DeGarmo, Sowers, and Allstate from the trial court's judgment and consolidated those appeals for consideration here.

ALLSTATE'S APPEAL

Record No. 021201

Allstate asserts that the trial court erred in not allowing Allstate to tell the jury that it was the uninsured motorist insurance carrier for Kiefer and to argue that an award of punitive damages would not serve as a deterrent if such award was paid by Allstate, not the defendant tortfeasors. Allstate argues that the requested action came within the scope of Code § 38.2-2206(F) which allows an insurer to appear in its own name and to take such action "allowable by law."

We have previously held that an insurance carrier was not allowed to inform the jury that it was the uninsured motorist carrier for the plaintiff and that it would be the source of payment for any damages the jury may award. In Travelers Ins. Co. v. Lobello, 212 Va. 534, 186 S.E.2d 80 (1972), the plaintiff asserted that the defendants were jointly and

5

severally liable for the plaintiff's damages.  The trial court allowed Travelers Insurance Company to tell the jury that it was the plaintiff's uninsured motorist carrier, that it was assisting in the defense of one of the defendants, and that it would be responsible for " 'payment for the recovery of any verdict' " returned against that defendant.  Id. at 535, 186 S.E.2d at 82.  We held that this communication was reversible error.  Injection of information identifying a party as an insurer may imply that the second defendant was insured and that such insurance would be available for both defendants.  This created "a situation permitting the return of a possibly inflated verdict binding upon all defendants so liable."  Id. at 536, 186 S.E.2d at 82.

Allstate seeks to distinguish Lobello pointing out that Lobello did not involve punitive damages and that, unlike the Lobello plaintiff, the plaintiff here did not object to the insurer's motion.  Relying on Willard v. Aetna Cas. & Sur. Co., 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973), Allstate asserts that if the insurer waives its objection to the injection of insurance in litigation, as Allstate did in this case, the mention of insurance is not improper.

Allstate's attempt to distinguish Lobello is not persuasive.  First, the rationale of Lobello does not rely on the nature of the damages at issue.  Next, the injection of

6

insurance in this case arose in the form of a pre-trial motion advanced by Allstate. Allstate bore the burden of convincing the trial court that the action it requested was proper and should be allowed. The plaintiffs' failure to "object" to Allstate's pre-trial motion is not dispositive under these circumstances.

Allstate's reliance on Willard is also misplaced. The injection of insurance into a case is generally held to be reversible error because of its prejudicial effect on a party. Most often the party prejudiced is the insurance carrier because, as we noted in Lobello, knowledge that insurance is available to pay any damages may result in an inflated damage award. But the party prejudiced by the injection of insurance is not always the insurer. In Lobello, the prejudice flowed to a defendant. Here, allowing Allstate to explain its position as Kiefer's uninsured motorist carrier and that it would be paying the punitive damages award, could improperly deflate the amount of the award, prejudicing the plaintiffs. Accordingly, the statement in Willard upon which Allstate relies, that an insurer may waive the public policy forbidding the injection of insurance because such policy is for the "benefit and protection of the insurer," is not applicable in this case. Id. at 483, 193 S.E.2d at 778.

7

Allstate's final argument is that it should have been allowed to make the requested disclosures to the jury because the policy considerations relating to an award of punitive damages differ from those applicable to compensatory damages. Allstate argues that the purpose of punitive damages is to punish the tortfeasor and that purpose is defeated if punitive damages are paid by the insurance company rather than the tortfeasor. Allstate acknowledges that thirty years ago we rejected this same argument. In Lipscombe v. Security Ins. Co., 213 Va. 81, 85, 189 S.E.2d 320, 323 (1972), we held that the requirement in the predecessor to Code § 38.2-2206 that an insurer pay "all sums" which an insured is legally entitled to recover as damages included payment of punitive damages. The insurer's policy argument failed because the subrogation provisions of that section subject the tortfeasor to liability for payment of punitive damages even though those damages are initially paid by the insurer. Id., 189 S.E.2d at 323-24.

Allstate seeks to avoid the holding in Lipscombe by asserting that Lipscombe involved an insured's direct action against its insurer and because Allstate, in this case, agreed to waive its subrogation rights. First, the plaintiff in this case, Kiefer, like the defendant in Lipscombe, entered into a contract with the insurer for payment of all sums the plaintiff was entitled to recover, including sums based on the

8

uninsured motorist provisions of the policy.  The difference in the form of the litigation undertaken to determine the extent of the insurer's liability does not distinguish Lipscombe from this case.

Allstate's purported waiver of its subrogation rights is also immaterial.[3]  Since this Court's decision in Lipscombe, the General Assembly has enacted Code § 38.2-227 which specifically states that "[i]t is not against the public policy of the Commonwealth for any person to purchase insurance providing coverage for punitive damages" awarded in personal injury negligence cases.  This policy allowing payment of punitive damages by insurers is not contingent upon whether such insurer can or will exercise rights of subrogation.

Finally, punishment of the wrongdoer is not the only purpose of punitive damages.  An award of punitive damages also serves the purposes of protecting the public and of providing an example and warning to deter others from engaging in the same or similar conduct.  Huffman v. Love, 245 Va. 311, 315, 427 S.E.2d 357, 361 (1993) (citing Baker v. Marcus, 201

---

[3] Apparently at trial, Allstate offered to waive its subrogation rights if the trial court granted its motion regarding its role and liability in this litigation and then did waive such rights "in return for the cooperation of [Sowers' and DeGarmo's] insurer in this appeal."

Va. 905, 909, 114 S.E.2d 617, 620 (1960)).  See Doe v. Isaacs,

265 Va. ___, ___ S.E.2d ___ (2003) decided today.

In summary, applying the principles established in

Lipscombe, Lobello, and Code § 38.2-227, we conclude that the

trial court correctly refused Allstate's request to inject

insurance into this case because of the potential for

prejudice to the plaintiffs and that the trial court's ruling

was consistent with the public policy of the Commonwealth.

APPEALS OF SOWERS AND DEGARMO

Record Nos. 021209 and 021227

DeGarmo and Sowers both assign error to the trial court's

refusal to bifurcate the jury's consideration of punitive and

compensatory damages.  The trial court's error, according to

the defendants, allowed the compensatory damages award to be

tainted by the jury's exposure to evidence relating to

punitive damages, resulting in awards that were inflated and

excessive as a matter of law.  DeGarmo also asserts that the

evidence was insufficient to support an award of punitive

damages.

Bifurcation

Trial courts have the inherent authority to consolidate

claims for trial and have been given specific authority to

order separate trials in certain circumstances.  Code § 8.01-

272; Rule 3:8; Clark v. Kimnach, 198 Va. 737, 745, 96 S.E.2d

10

780, 787 (1957). A decision to order separate trials or to consolidate claims for a single trial is a matter of procedure, left to the trial court's discretion. In making this decision, a trial court must be cautious to insure that separating or consolidating claims for trial does not prejudice the substantial rights of any party. Id. When considering a request for separate trials, the trial court must also consider any resulting unnecessary delay, expense, or use of judicial resources that would flow from separate trials of the claims at issue. Leech v. Beasley, 203 Va. 955, 960-61, 128 S.E.2d 293, 297 (1962). In reviewing the trial court's ruling regarding consolidation or separation of trials, we will not alter the ruling unless the trial court plainly abused its discretion. Id.

Here, the defendants have not sought separate trials of the claims at issue. Rather, the defendants requested bifurcation, or sequencing, of the jury's consideration of two issues in the case. See e.g. Code § 8.01-374.1 (allowing bifurcation of issues in certain asbestos litigation). Nevertheless, the standards applied to determinations regarding the consolidation or separation of trials are equally applicable to questions involving the bifurcation of the issues presented in this case. A determination in a civil trial regarding the bifurcation of a jury's consideration of

11

issues is a matter for the trial court's discretion and requires consideration of whether any party would be prejudiced by granting or not granting such request, as well as the impact on judicial resources, expense, and unnecessary delay.

On the morning of trial, the defendants admitted liability and made a motion to bifurcate the jury's consideration of compensatory and punitive damages, arguing that the compensatory damages would be tainted by evidence relevant only to the punitive damages claims. Such evidence included the intoxication of both defendants, their extended drinking "spree," and their claim that a third party was driving the car.

The trial court, in ruling on the defendants' request, noted that juries are routinely required to differentiate between evidence of compensatory and punitive damages in negligence cases. While the trial court commented that the defendants' admission of liability gave him "a little pause," it concluded that in the absence of any case directly on point, the matter could be handled through instructions to the jury.

The defendants claim, however, that the amount of the compensatory awards shows that they were prejudiced by the jury's improper consideration of evidence relevant only to

12

punitive damages and, therefore, that denying bifurcation was an abuse of discretion.  We disagree.

The amount of the compensatory damages award alone is not determinative of whether the trial court abused its discretion in this case.  Whether the decision constituted an abuse of discretion must be viewed from the perspective of the facts and circumstances known to the trial court at the time of its ruling.  Nothing in this record suggested that the refusal to bifurcate would have caused the jury to experience any greater difficulty in determining compensatory damages than normally present in cases in which a jury determines a defendant's liability for and the amount of compensatory and punitive damages in a single proceeding.

In this case, prior to jury selection the trial court instructed the venire regarding the nature of punitive damages and that certain evidence should be considered only for compensatory damages while other evidence should be considered only for punitive damages.  The court's instructions to the jury at the conclusion of the evidence distinguished between compensatory and punitive damages.  And, the verdict form submitted by the court to the jury delineated the compensatory damages award from the punitive damages award.

The only deficiency cited by the defendants regarding instruction of the jury is Sowers' assertion that because

13

certain evidence was relevant and admissible solely for evaluating the punitive damages issue, the trial court should have given "clear and explicit instructions regarding which portions of the plaintiffs' testimony were to be considered by [the jury] regarding punitive damages only." Sowers seeks to impose a procedural requirement that a trial court give a cautionary instruction regarding the proper use of each piece of evidence. This has never been required in cases involving punitive and compensatory damages, and we decline to adopt it in this case.

Finally, the defendants argue that this Court's decision in Eubank v. Spencer, 203 Va. 923, 128 S.E.2d 299 (1962), requires bifurcation in this case. We disagree with the defendants. In Eubank, the defendant admitted that he was negligent, and the trial proceeded on the plaintiff's claims for compensatory and punitive damages. The plaintiff abandoned her claim for punitive damages after admission of evidence on both issues, and the jury considered only the compensatory damages issue. The error of the trial court in Eubank was the failure to instruct the jury, following the abandonment of the punitive damages claim, that the jury should not consider the evidence irrelevant to compensatory damages. Id. at 926-27, 128 S.E.2d at 302. Here, the punitive damages claims were not abandoned by the plaintiffs.

14

Accordingly, we conclude that the trial court did not abuse its discretion in refusing the defendants' request for bifurcation of the jury's consideration of compensatory and punitive damages.

Compensatory Damages

Defendants argue that the compensatory damages awards to Wade and Kiefer of $75,000 each and $100,000 to Steele, were excessive as a matter of law because the plaintiffs' special damages were approximately $2,000, $5,000, and $6,000, respectively.

A verdict is excessive when it shocks the conscience of the court and creates the impression that the jury was biased or prejudiced against a party, or misunderstood the facts or the law, or suggests that it was not the product of fair and impartial decision making because it is so disproportionate to the injuries incurred. Smithey v. Sinclair Refining Co., 203 Va. 142, 146, 122 S.E.2d 872, 875 (1961).

In this case, each of the plaintiffs suffered soft tissue injuries. Wade sustained cervical and lumbar strains, and as a result, experiences neck pain while operating heavy equipment on his job. Further, he curtailed his avocational activities due to his injuries. Wade testified that at the time of the trial, three years after the accident, he continued to experience "pain, constant pain, every day."

Similarly, Kiefer testified that she has low back pain "[e]very day" in conjunction with her work at a flower shop. She suffered pinched nerves and soft tissue injury which is consistent with chronic pain. Finally, Steele suffered severe headaches and neck pain which did not respond to medication or physical therapy. Her neurologist diagnosed her with a chronic cervical strain and muscle spasms which caused headaches. The neurologist testified that Steele sustained a permanent injury in the accident which would cause chronic discomfort and pain on the left side of her neck and would limit her neck movement. As a result of her injuries Steele must perform daily therapy exercises. She testified that she lives with pain and has to "work with the pain."

Whether a verdict is excessive is left to the discretion of the trial court. Modaber v. Kelley, 232 Va. 60, 69, 348 S.E.2d 233, 238 (1986). In this case, the verdict did not shock the conscience of the trial court. The jury instruction specifically identified the elements of damage that could be included in a compensatory damages award. Although there is a disparity between the actual medical expenses of these plaintiffs and the compensatory damages award, each plaintiff experiences chronic pain in the course of everyday life, and the jury was entitled to compensate them for pain and suffering. When viewed in this light, the disparity between

incurred medical costs and the amount of compensatory damages awarded does not rise to a level suggesting that it was not the product of fair and impartial decision making. Based on this record, we cannot say that the trial court abused its discretion in refusing to set aside the compensatory damages awards on the grounds that they were excessive as a matter of law.[4]

### Punitive Damages

DeGarmo asserts that, as a matter of law, the evidence is insufficient to support an award of punitive damages for negligent entrustment and that the trial court erred in refusing to set aside the punitive damages award against him.

An award of punitive damages requires a showing that a defendant's "conduct was of 'such recklessness or negligence as evinces a conscious disregard of the rights of others.' " Puent v. Dickens, 245 Va. 217, 219, 427 S.E.2d 340, 342 (1993) (quoting Baker, 201 Va. at 909, 114 S.E.2d at 621). DeGarmo argues that neither his intoxication nor his understanding of the extent of Sowers' intoxication alone, without evidence of additional egregious conduct, can support an award of punitive damages. And, DeGarmo concludes, other than being very drunk,

---

[4] In light of this holding, we need not address DeGarmo's assignment of error claiming that evidence of post-accident conduct should not have been admitted for purposes of compensatory damages.

there is no evidence that he engaged in any conduct that could be considered reckless.

We agree with DeGarmo that mere intoxication would be insufficient to establish willful and wanton conduct.[5] However, whether a defendant acted willfully or wantonly in conscious disregard for the safety of others, involves consideration of the entire conduct of the defendant. Huffman, 245 Va. at 314-15, 427 S.E.2d at 360.  The record in this case shows that DeGarmo and Sowers had been drinking together since approximately 5:00 p.m. and had consumed more than two fifths of whiskey and numerous beers.  Although DeGarmo drove until just before the accident at 11:00 p.m., he apparently decided that he could not drive any longer because if he did so, he would cause an accident.  As DeGarmo testified, he had "run [them] out of the road two or three times."  DeGarmo was aware of the amount of alcohol Sowers consumed and knew, or should have known, that Sowers was equally unable to drive safely and was equally likely to cause an accident.  Then, while Sowers was driving the car along narrow, curvy, country roads, DeGarmo repeatedly expressed a need to get home and urged Sowers to "speed up."

---

[5] Code § 8.01-44.5 provides that a presumption of willful and wanton conduct attaches to a driver with a blood alcohol level 0.15 percent or higher.

18

A jury could properly conclude that DeGarmo's conduct amounted to more than simple negligence and reflected a conscious disregard for the safety of others. In addition to DeGarmo's intoxication and his knowledge of Sowers' intoxication, DeGarmo encouraged a person he knew was impaired to drive faster on roads that he knew were difficult to navigate. Accordingly, the trial court did not err in refusing to set aside the punitive damages award against DeGarmo.

In summary, for the reasons set out above, we conclude that the trial court did not err in refusing to allow Allstate to inform the jury that it was one of the plaintiffs' uninsured motorist insurance carrier and that it had liability for payment of any punitive damages award, that the trial court did not abuse its discretion in refusing to bifurcate the jury's consideration of punitive and compensatory damages, that the compensatory damages awards were not excessive as a matter of law, and that the evidence supported an award of punitive damages against DeGarmo. Accordingly, we will affirm the judgment of the trial court.

Record No. 021201 – Affirmed.
Record No. 021209 – Affirmed.
Record No. 021227 – Affirmed.