COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Russell and Senior Judge Frank

MIGUEL ANGEL CABANEZ

v.      Record No. 0878-15-4

PRINCE WILLIAM COUNTY
 DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
APRIL 5, 2016

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard B. Potter, Judge Designate

(Maureen A. Kersey; Sarah C. Collins; Katherine C. McCollam, on
briefs), for appellant.

(Cheryl A. Walton, Assistant County Attorney; Elaine Trautwein,
Guardian *ad litem* for the minor children, on brief), for appellee.


Miguel Angel Cabanez (father) appeals the orders terminating his parental rights to his

children. Father argues that the trial court erred by (1) finding that the evidence was sufficient to

terminate his parental rights pursuant to Code § 16.1-283(C)(2); and (2) consolidating his case with

the case for the children's mother. Upon reviewing the record and briefs of the parties, we

conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the

trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father and Tiesha Milbourne (mother) are the biological parents of three children, who are the subject of this appeal.[1] The evidence proved that the Department had been involved with the family for many years. On August 5, 2009, the Department removed the children after receiving allegations of abuse and neglect. Father subsequently was convicted of assault and battery because he had physically abused the middle child, which resulted in a handprint across her face and bruises on her shoulder, legs, and torso. On December 8, 2011, mother received sole custody of the children.

On January 16, 2013, mother was arrested for driving under the influence and possession of marijuana and a concealed weapon. Father reported mother's arrest to the Department. The Department entered into respite agreements with mother. The children were engaging in sexually inappropriate behavior, so the Department separated the oldest child from the two youngest children.

On February 12, 2013, father informed the Department that he lived with his mother and could not take the children due to renovations being done at his mother's house. On March 14, 2013, father was convicted of and incarcerated on two charges of driving on a revoked license related to failure to pay child support for another child.

On March 14, 2013, the Prince William County Juvenile and Domestic Relations District Court (the J&DR court) transferred custody of the children to the Department. The J&DR court subsequently entered orders that incorporated the Department's foster care plans. The Department required father to participate in a psychological evaluation and follow the recommendations arising therefrom, participate in individual and family counseling, obtain housing, demonstrate the ability to financially provide for the children, and have reliable transportation.

---

[1] The children were born in 2004, 2006, and 2009.

When father was released from jail on July 4, 2013, he continued to live with his mother. Her house was renovated, and she planned to sell it. He did not have a full-time job. In August 2013, he obtained a vehicle and regained his license. He started working part-time. Beginning in September 2013, father attended a sixteen-week parenting class.

In October 2013, the J&DR court held review hearings and rejected the goals of return home and relative placement. Father subsequently met with the Department and told them about a townhouse in which he and his mother planned to live. In November 2013, the Department filed plans with goals of return home to father and termination of mother's parental rights.

In January 2014, the Department arranged for father to have extended supervised visitation and intensive attachment-focused family therapy. Despite the therapy, the counselor noted that in August 2014, father "was still really struggling with helping the children keep their boundaries and the children were having difficulty following his directions."

In April 2014, father joined the children's sexually reactive behavior therapy. He missed several sessions. Father did not believe that the oldest child was engaging in sexual behaviors, despite evidence to the contrary. He also denied being the person who exposed the children to inappropriate behavior, but the children reported seeing their mother and father engage in sexual activity. Father terminated the services in November 2014.

In June 2014, the Department informed father that he not only had to complete the recommended services, but he had to demonstrate his understanding and ability to parent the children.

In June 2014, father moved to a townhouse that was over an hour away from the children and services. The townhouse was unfurnished. He provided the Department with a copy of the lease, which stated that his mother was "the sole responsible party for payment of rents."

During the summer of 2014, father expressed concern about the costs of attending family and individual therapy sessions. He stated that he was concerned that he would not have enough financial resources "to do any activities with the kids let alone feed them."

On October 25, 2014, the J&DR court did not approve the plans to return the children home to father and terminated mother's parental rights. In November 2014, father revoked all releases, so the therapists could not coordinate or discuss services. Visitation ended. At the end of November 2014, father moved into a federally-subsidized townhouse, closer to the children and services. He still relied on his mother for assistance with the rent.

On December 15, 2014, the J&DR court terminated father's parental rights. He appealed to the circuit court.

From December 2014 through February 2015, mother lived with father in his townhouse. During that time period, the 911 emergency system received three calls because of domestic violence between mother and father.

Over father's objections, the circuit court consolidated the matters for purposes of trial. The circuit court heard evidence and argument on March 23, 24, 25, 30, and 31, 2015 and April 1, 27, 28, and 29, 2015. On May 8, 2015, the circuit court entered orders terminating father's parental rights to the three children.[2] This appeal followed.

ANALYSIS

*Assignment of error #1*

Father argues that the trial court erred by terminating his parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation

---

[2] The circuit court also terminated mother's parental rights. Mother did not appeal.

of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father asserts that he was not the children's primary caregiver when the children initially came into the Department's care and "therefore should not have been required to substantially remedy the condition leading to foster care for his children."

Code § 16.1-283(C)(2) states that a parent needs "to remedy substantially the conditions which led to *or required continuation* of the child's foster care placement." (Emphasis added.) Father was not able to take the children when they entered the Department's care. He was incarcerated from March 13 until July 4, 2013. When he was not in jail, father was living with his mother, and her house was undergoing renovations. Therefore, the children had to be placed in foster care. Housing remained an issue for father throughout the case. Although he later obtained housing, his mother paid his rent. He could not demonstrate an ability to financially provide for the children.

Furthermore, the trial court noted that even though father had taken some steps to comply with the Department's requirements, he was unable to meet most of the requirements and substantially remedy the conditions which led to the children going into and remaining in foster care. Father attended parenting classes and counseling, but was unable to demonstrate that he could apply what he learned. The children had special needs, and the trial court found that father

was unable to meet their needs. One therapist opined that it would take at least an additional one or two years for father to be ready to parent the children, but she doubted whether it would be possible.

The trial court noted that there were reports of domestic violence between father and mother in the past and father previously had been convicted of assault and battery against the middle child. However, the trial court was deeply concerned about the reports of domestic violence between the parties as recently as January and February 2015, shortly before the trial. The trial court concluded, "Nothing reflects the inability of these parties to make good decisions that are in the best interests of the children than this conduct just weeks ago." The trial court further stated,

> The Court finds that these parties are incapable of providing a safe and secure environment in which to raise the children together or separately. They are incapable of putting the best interests of the children ahead of their own, and they are incapable of complying with the simplest and most reasonable requests of the requirements of the [Department] to provide a safe, secure and stable home, in the present or in the future, that would be unmarked by such domestic violence, anger or dangerous conditions.

At the time of the trial, the children had been in foster care for approximately two years, and father was still not in a position to care for the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the trial court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

Father argues that the trial court erred when it consolidated his case with mother's case for termination of parental rights.[3] On December 31, 2014, the Department filed a motion to consolidate father's appeal with mother's case and schedule both trials for the same time. Mother's trial already had been set for six days in March and April 2015. On January 15, 2015, father filed an "Opposition to Motion to Consolidate." He argued that his case and mother's case were "fundamentally different cases, contain different facts, involve different parents . . . , present two entirely different foster care cases and their interests are adverse to one another." A hearing was held on January 15, 2015, and the trial court entered an order on the same day. The trial court disagreed with father and granted the Department's motion to consolidate. The trial court made the following findings in support of granting the motion:

> 1. The termination cases are closely related:
>
>> i. in nature in that both involve the involuntary termination of residual parental rights as to these three children
>> ii. in facts as the potential evidence presented in these cases will involve similar relevant dates, times, and places for events as well as witnesses presenting information that involves both parents
>> iii. in potential witnesses, including potential expert witnesses
>> iv. in the participation of the Guardian *ad litem*
>> v. The burden of proof for both sets of termination is the same.
>> vi. Therefore, it would be in the best interests of the children to have both sets of termination cases heard at the same time.
>
> 2. Sufficient evidence shown that having both sets of cases heard at the same time would prevent multiplicity of evidence and promote judicial economy;

---

[3] The Department argues that father did not preserve this issue because he filed objections to the January 15, 2015 order on March 23, 2015. The Department asserts that the objections were not timely filed, and consequently, did not preserve father's arguments. The Court finds that father preserved his arguments in his "Opposition to Motion to Consolidate."

3. Sufficient evidence shown that consolidation is convenient to all parties, the subject matter of these actions, the Court, and potential witnesses and that the failure to consolidate would be inconvenient to the parties;

4. There has been no showing of prejudice as to either biological parent as to consolidation. Furthermore, the Court is capable of separating evidence as it pertains to each parent;

5. No evidence of any serious risk of compromising a serious right of any party or prevent the Court from entering a reliable judgment would not be made if the cases were consolidated.

"In reviewing the trial court's ruling regarding consolidation or separation of trials, we will not alter the ruling unless the trial court plainly abused its discretion." Allstate Ins. Co. v. Wade, 265 Va. 383, 392, 579 S.E.2d 180, 185 (2003) (citation omitted); see also Clark v. Kimnach, 198 Va. 737, 745, 96 S.E.2d 780, 787 (1957). "Absent a showing of prejudice, we find no abuse in the circuit court's discretion to consolidate the cases." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 336, 746 S.E.2d 509, 529 (2013) (citing Tazewell Oil Co. v. United Virginia Bank/Crestar Bank, 243 Va. 94, 112, 413 S.E.2d 611, 621 (1992)). "When considering a request for separate trials, the trial court must also consider any resulting unnecessary delay, expense, or use of judicial resources that would flow from separate trials of the claims at issue." Allstate Ins. Co., 265 Va. at 392, 579 S.E.2d at 185 (citing Leech v. Beasley, 203 Va. 955, 960-61, 128 S.E.2d 293, 297 (1962)).

As indicated by the trial court's findings in the January 15, 2015 order, the trial court found that consolidating the cases for trial promoted judicial economy and was convenient to all parties. It also found that the consolidation was in the children's best interests because the cases were closely related.

Father failed to show how the decision to consolidate the matters for trial prejudiced his case. Father had the opportunity to present evidence and question witnesses. He argued that the Department removed the children from mother's care, so the focus was on mother. However, as

discussed above, the Department provided services to father in order to try to return the children home to his care, but he did not comply. Contrary to father's arguments, the trial court considered father's case separately from mother's case and found that neither party had substantially remedied the situation which led to the children being placed in, and remaining in, foster care.

Based on the record, the trial court did not abuse its discretion in consolidating the cases.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.