COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Callins
Argued at Richmond, Virginia

UNPUBLISHED

HALIFAX REGIONAL LONG TERM CARE, INC.
 T/A THE WOODVIEW

v.      Record No. 0685-23-2

LYNNETTE M. NELSON, AS ADMINISTRATRIX
 OF THE ESTATE OF IDA C. DONAWAY, DECEASED

MEMORANDUM OPINION[*] BY
JUDGE DOMINIQUE A. CALLINS
NOVEMBER 26, 2024

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
S. Anderson Nelson, Judge

S. Virginia Bondurant Price (Juliet B. Clark; Alicia M. Penn;
Carlyle R. Wimbish, III; Michelle L. Warden; McGuireWoods
LLP; Wimbish Gentile McCray & Roeber, PLLC, on briefs), for
appellant.

L. Steven Emmert (Robert W. Carter, Jr.; Mary Estfanous; Sykes,
Bourdon, Ahern & Levy, PC; Law Offices of Robert W. Carter, Jr.,
on brief), for appellee.

Following Ida C. Donaway's death at the Woodview nursing home, Lynnette M. Nelson,

Donaway's daughter and administratrix of Donaway's estate, sued Halifax Regional Long Term

Care, Inc., the owner and operator of Woodview. Nelson sued Halifax for negligence and

wrongful death, and, after a jury trial, the trial court awarded judgment to Nelson. On appeal,

Halifax argues that the trial court erred in denying its motion to set aside the jury's verdict for

two reasons: first, the evidence did not support damage awards for statutory beneficiaries Craig

Donaway and Christin Dukes; and second, the jury verdict was excessive and speculative in light

of Donaway's statutory life expectancy. Halifax also contends the trial court erred in denying its

_____

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

motion to bifurcate the survival and wrongful death claims and in allowing testimony from two witnesses.

We agree with Halifax that the trial court erred when it denied Halifax's motion to set aside the jury's award for statutory beneficiaries Craig and Christin. Therefore, we reverse and vacate the trial court's judgment as to Craig and Christin. We affirm, however, the judgment of the trial court denying Halifax's motion to set aside the jury verdict based on Donaway's statutory life expectancy, denying Halifax's motion to bifurcate, and in allowing the witness testimony. In short, we reverse and vacate in part and affirm in part.

BACKGROUND[1]

Ida C. Donaway was an 86-year-old woman with a lengthy medical history. She suffered from multiple strokes, a brain bleed that required surgery, Fibrillation (AFib), high blood pressure, and Chronic Obstructive Pulmonary Disease (COPD). In 2012, Donaway suffered her third stroke and was transported to the hospital by ambulance. The hospital released Donaway to Woodview because she had lost the ability to speak, struggled to eat and swallow, was incontinent, and required skilled nursing care.

At the time of her admission, Woodview staff determined that Donaway was "at high risk to get pressure ulcers." Based on Donaway's status as a high risk patient, and because "she was immobile [and] incontinent, she should have been turned and repositioned every hour while she was in the bed, every hour while she was in the chair, and her heels should have always been off of the bed or off of the chair." Donaway relied upon Woodview staff to turn and reposition her to prevent ulcers from developing and deteriorating. Within a month of her admission, however, Donaway developed pressure ulcers in her heel and sacral area. Donaway's ulcer in her sacral

---

[1] "In reviewing the evidence presented at trial, we view it 'in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.'" *Pergolizzi v. Bowman*, 76 Va. App. 310, 317 n.1 (2022) (quoting *Starr v. Starr*, 70 Va. App. 486, 488 (2019)).

- 2 -

area emitted an odor and her temperature and white blood cell count both elevated, all of which indicated that the ulcer was infected. Because of this, Woodview staff cultured Donaway's sacral pressure ulcer, which confirmed that the ulcer was infected.

Woodview referred Donaway to the Halifax Regional Wound Clinic. Although Donaway's doctor prescribed her antibiotics, she developed a fever and her ulcers deteriorated. Donaway's doctor admitted her to Halifax Regional Hospital for eight days, where she received treatment. Donaway also had a feeding tube and a Foley catheter while she was in the hospital. After being discharged from the hospital, Donaway was admitted to Meadowview Terrace, another nursing home, where she continued to receive treatment, but her ulcers did not heal.

Donaway passed away on May 17, 2013. Her death certificate stated that her immediate cause of death was "severe" COPD, which she had suffered from for "years." The death certificate also stated that "cerebrovascular accident, atrial fibrillation, adult failure to thrive, dementia, and sacral wounds" contributed to Donaway's death.

Nelson, Donaway's daughter, filed a complaint asserting a survival claim for negligence and a wrongful death claim. Nelson claimed that Woodview staff breached their duties to prevent and properly treat Donaway's pressure ulcers and that this failure led to Donaway's death. Nelson sought $6,000,000 in damages, plus interest and costs. Halifax filed an answer, denying Nelson's allegations.

Halifax also moved to bifurcate the issues of liability and damages at trial. Halifax argued that Code § 8.01-56 prohibited Nelson from recovering for both Donaway's personal injuries and her wrongful death. Halifax contended that because Nelson declined to elect between the two remedies, "the only way to prevent the prejudicial intermingling of evidence related to those disparate claims [was] for [the trial court] to bifurcate the issues of liability and damages at trial." Halifax argued that if Nelson offered evidence of damages at the same time as

evidence of liability, the jury would be confused and may award damages that Nelson was not entitled to recover as a matter of law. Nelson objected to Halifax's motion. After considering the parties' arguments, the trial court denied Halifax's motion, stating that it did not see any "potential prejudice." The trial court held that the jury could be instructed "properly" on the two claims. Because the matter was complex and the nature of the evidence would be the same in two trials, the trial court found that trying the matters together would better serve judicial economy.

Before trial, Woodview admitted to breaching the standard of care, thereby resulting in Donaway's development of pressure ulcers in the heel and sacral area. The parties disputed, however, the cause of Donaway's death, as well as the proper measure of damages resulting from the admitted negligence.

During the two-day jury trial, the parties presented evidence about Donaway's condition. Nelson offered Connie Lambert, a registered nurse and a former director of nursing at a long-term care facility, as an expert in pressure ulcer prevention "in a setting like the Woodview."[2] Halifax objected to Lambert's testimony, arguing that it was not relevant, given their admission of negligence. The trial court overruled the objection. Lambert reviewed Donaway's records from Woodview and, based on her "education, training, and experience," opined that Woodview staff violated the standard of care concerning pressure relief by failing to regularly turn and reposition Donaway in her bed. Lambert explained that based on Donaway's high risk of developing ulcers, the staff should have turned her every hour. After examining Donaway's records from her time at Woodview, Lambert discovered that there were 86 different shifts, each shift being eight hours long, when the staff did not turn or reposition Donaway.

---

[2] Lambert did not care for Donaway at Woodview.

Nelson also offered the deposition testimony of Judith Anderson, a family nurse practitioner, who assessed Donaway while she was at Woodview. Halifax objected to the admission of Anderson's testimony, again arguing that this testimony was irrelevant because Halifax had admitted negligence. The trial court overruled the objection. After reviewing the progress notes that related to her interaction with Donaway, Anderson acknowledged that she regularly described Donaway's ulcers as "controlled." Anderson testified that she based this assessment "on information provided to [her] by the Woodview's nurses that there had not been deterioration of the wound." Had she been informed that Donaway's ulcers had deteriorated, Anderson claimed that she would not have described it as "controlled" in the progress notes. Anderson also testified that Donaway's "elevated" white blood cell count and temperature indicated that Donaway's ulcers were likely infected.

Nelson testified that she regularly visited her mother at Woodview and never witnessed Woodview's staff reposition Donaway. After Donaway entered the hospital, Nelson saw that when the hospital staff moved Donaway to care for the pressure ulcers, Donaway's face would "kind of grimace or cringe." When Donaway transferred to Meadowview, her ulcers had not completely healed, and Nelson noticed that Donaway continued to "scrunch her face up and look like she was in a little bit of pain" when Meadowview staff would turn and reposition her. Nelson felt "horrible" when she saw her mother in pain and said it "broke [her] heart." Nelson described this time as "a roller coaster," because she wanted to help her mother, but "it didn't work."

Nelson also testified that she was with Donaway when she died and that her mother's death "affected [her] life horribly." Kerry Nelson, Nelson's husband, testified that he and his wife felt "[d]isbelief, guilt, sadness, [and] sick" upon Donaway's death. Nelson introduced no

evidence regarding the existence of Craig Donaway and Christin Dukes, Donaway's grandchildren, or the impact of Donaway's death on them.[3]

Dr. Catherine M. Kelso, an expert witness on pressure ulcer development, treatment, and complications, opined that Woodview's failure to reposition Donaway led to the development and deterioration of her sacral pressure ulcer. Kelso explained that the ulcer deteriorated and "was not permitted to improve because of the repetitive trauma of the unrelieved pressure." Once Donaway was admitted to the hospital, her ulcers were "as bad as it could get," according to Kelso. Because Donaway's ulcers were "very severe" and the pain "was a stressor," Kelso testified they "trip[ped] off her chronic conditions." Kelso opined that Donaway's ulcers were "interrelated" with the conditions listed on Donaway's death certificate, as it was "the trauma from the pressure ulcer that put her through the stress of all the procedures she had to have" to treat the ulcer, as well as the Foley catheter. As part of her review, Kelso also considered Virginia's statutory table of life expectancies in Code § 8.01-419. Using this table, Kelso testified that Donaway's life expectancy, as an 86-year-old female when she entered Woodview, was 6.6 years.

Dr. Jill Allen, who prepared Donaway's death certificate, testified that Donaway's cause of death was severe COPD. Allen listed other medical conditions, including Donaway's sacral ulcer, that contributed to her death but testified that the ulcers did not result in the underlying cause of death.

Both parties offered proposed jury instructions. Relevant to this appeal, Halifax offered a proposed instruction that should the jury have found that Woodview staff's negligence was the

---

[3] When asked, Kerry Nelson testified that he did not know the last time Donaway saw her "grandkids" but that he believed "it would have been some time in February, probably." In addition to Craig Donaway and Christin Dukes, who are children of Donaway's deceased child, Donaway had three grandchildren through Nelson. At trial, the parties did not explore to whom Kerry Nelson referred when referencing the "grandkids."

proximate cause of Donaway's injury and death, their verdict should have included damages for the "sorrow, mental anguish and loss of solace" of Donaway's statutory beneficiaries. Donaway's statutory beneficiaries were her daughters, Nelson and Pam Farlow, and her grandchildren, Craig Donaway and Christin Dukes. The trial court provided the jury with Halifax's instruction.

The jury found in Nelson's favor and awarded compensatory damages in the amount of $700,000 to Nelson, $400,000 to Farlow, and $150,000 each to Craig Donaway and Christin Dukes. The jury also awarded $87,100.17 in medical expenses, and $13,225.30 for funeral and burial expenses. In addition, the jury awarded pre-judgment interest on the $1,400,000 damage award, beginning on May 17, 2013, the date of Donaway's death.

Halifax moved to set aside the jury's verdict, arguing that the total amount of damages was excessive. Although the trial court denied Halifax's motion to set aside the jury's verdict, it agreed to limit the prejudgment interest to the date Nelson filed the complaint, as opposed to the date of Donaway's death. The trial court then entered a final order awarding judgment in the amount of $1,500,325.47 plus applicable interest. Halifax appeals.

ANALYSIS

I. Motion to Set Aside the Jury Verdict

Halifax challenges the trial court's denial of its motion to set aside the jury's verdict on two grounds. Halifax contends that the trial court erred because Donaway's grandchildren and statutory beneficiaries, Craig and Christin, failed to prove their damages. Halifax also argues that the jury's verdict was excessive and speculative.

"It is well-settled that 'a party who comes before us with a jury verdict approved by the circuit court "occupies the most favored position known to the law."'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*,

244 Va. 51, 57 (1992)). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Id.* (alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)). "'[W]here the trial court has declined to . . . set aside a jury verdict,' this Court 'consider[s] whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff.'" *Boyd v. Weisberg*, 75 Va. App. 725, 736 (2022) (alterations in original) (quoting *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 547-48 (2019)).

### A. *Statutory Beneficiaries Craig and Christin*

Halifax argues that the trial court erred in denying its motion to set aside the jury's award in favor of Craig and Christin, as statutory beneficiaries, because the evidence did not support the award. We agree. Because Nelson failed to present evidence of Craig and Christin's "sorrow, mental anguish and loss of solace" from Donaway's death, we reverse and vacate the judgment of the trial court awarding $150,000 to Craig and Christin, respectively.

In a wrongful death action, "the surviving spouse, children of the deceased and children of any deceased child of the deceased" are statutory beneficiaries. Code § 8.01-53(A). In such cases, the statutory beneficiaries "eligible to receive [a damages] distribution shall be fixed (i) at the time the verdict is entered if the jury makes the specification or (ii) at the time the judgment is rendered if the court specifies the distribution." Code § 8.01-53(B). The jury or the court may award damages to statutory beneficiaries for their "[s]orrow, mental anguish, and solace." Code § 8.01-52(1). Yet merely being entitled to the possibility of recovery by statute does not circumvent a statutory beneficiary's responsibility to supply evidence to support a jury verdict.

Here, it is undisputed that Craig and Christin were, as Donaway's grandchildren, statutory beneficiaries. During the trial, Halifax offered a jury instruction that included Craig and Christin as

statutory beneficiaries because they had not "renounced any entitlement that they ha[d]" under the statute. The trial court thereafter properly provided a jury instruction that listed them as beneficiaries.[4] Separate and distinct, however, from listing Craig and Christin as beneficiaries is whether the jury's verdict awarding Craig and Christin $150,000 each is plainly wrong or without evidence to support it.

Even when viewing the evidence in the light most favorable to Nelson as the prevailing party below, the trial court erred in denying Halifax's motion to set aside the jury verdict for Craig and Christin. No evidence at trial demonstrated that Craig and Christin experienced sorrow, mental anguish, or loss of solace following the death of their grandmother, Donaway. Although Nelson and her husband, Kerry, testified to *their* distress and sadness, the testimony heard at the trial did not mention Craig or Christin. In fact, even Nelson's counsel admitted at trial that there was "no evidence to support distribution of any recovery to them." It appears that the jury was unaware of their existence or involvement until closing arguments, when Nelson's counsel stated that they were "grandchildren [Nelson was] not about to drag into this courtroom." Because the jury verdict awarding damages for statutory beneficiaries Craig and Christin was without evidence, we reverse and vacate the judgment of the trial court.

---

[4] Nelson contends that Halifax's argument here is waived because "[t]he listing of the grandchildren as beneficiaries in the instruction and on the verdict form, without objection, consigned the question to the jury." Accordingly, Nelson argues that Halifax "now argues that no evidence justified listing the grandchildren among the beneficiaries" and that this "objection had to be raised when the instruction was offered." We disagree. As stated, Craig and Christin had not renounced their entitlement under the statute. Thus, their names properly appeared on the jury instruction and verdict form. After the jury awarded a $150,000 jury verdict to both Craig and Christin, Halifax argued that the record was "completely devoid of evidence to support" awards to Craig and Christin. On review, this Court may set aside a trial court's judgment sustaining a jury verdict if it is plainly wrong or without evidence to support it. *Ellis*, 299 Va. at 622. Because no evidence supports the jury's $150,000 verdict to both Craig and Christin, we reverse.

B. *Excessive and Speculative Verdict*

Halifax argues that the jury's verdict was excessive and speculative. Halifax argues that the trial court erred when it denied its motion to set aside the verdict for insufficient evidence of causation and damages based on Donaway's statutory life expectancy of 6.6 years. Halifax alleges that the only evidence put forth at trial related to Donaway's life expectancy was based upon the statutory life expectancy table. Halifax's argument is without merit.

We review the trial court's decision to accept the jury's damage award for an abuse of discretion. *City-to-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 348 (2023) (discussing excessive damages verdicts). "An award of damages must be set aside if the amount 'is so great' that it 'shock[s] the conscience of the court' and 'create[s] the impression that the jury' was 'motivated by passion, corruption[,] or prejudice,' or misunderstood 'the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision.'" *Id.* (alterations in original) (quoting *Allied Concrete Co. v. Lester*, 285 Va. 295, 311 (2013)).

Code § 8.01-419 includes a table of life expectancy for parties to present as evidence whenever "it is necessary to establish the expectancy of continued life of any person from any period of such person's life, whether [s]he be living at the time or not." The table provides that an 86-year-old female's life expectancy is 6.6 years. Code § 8.01-419. Donaway entered Woodview at the age of 86 in 2012, so according to the table, Donaway had a life expectancy of 6.6 years. Donaway, however, died at the age of 86 in 2013.

Halifax asserts that "Donaway's beneficiaries were not entitled to recover damages for sorrow, mental anguish, and loss of solace after 2019" because based on the table, "Donaway would have died regardless of [Woodview's] negligence." Halifax argues that "[i]n order to support an award of damages in this situation, there would need to be testimony of the value to the

- 10 -

beneficiaries of Ms. Donaway's life between 2013—when she died—and 2019, when she statutorily would have been expected to pass according to the only life expectancy evidence presented." Because Nelson "presented no testimony connecting any of the beneficiaries' harms to the relevant time frame," Halifax argues that "the jury must have resorted to speculation or conjecture to come up with the damages it awarded."

As Nelson argues, however, "Code § 8.01-419 does not create a ceiling on damages." Rather, the Code explicitly provides that the table is evidence of a deceased person's life expectancy, similar to "other evidence as to the health, constitution and habits of such person." Code § 8.01-419. The trial court admitted the life expectancy table into evidence for the jury's consideration and instructed the jury to "consider the life expectancy figure introduced as evidence along with any other evidence relating to the health, constitution and habits of . . . Donaway in determining her life expectancy." The jury also heard evidence of Donaway's other ailments, as well as Nelson's testimony regarding Donaway's pain due to the ulcers, and the mental anguish Donaway's family felt from seeing her in pain and from her death. Based on the totality of the evidence, the damages award was not so excessive as to shock the conscience of the court, nor does the record reflect that the jury was influenced by passion, corruption, or prejudice. We therefore affirm the trial court's judgment denying Halifax's motion to set aside the jury's verdict.

II. Motion to Bifurcate

Halifax argues that the trial court erred in denying its motion to bifurcate the issues of liability and damages[5] at trial. Because we disagree with Halifax, we affirm the trial court's judgment.

---

[5] In Halifax's third assignment of error, it states that the trial court erred in denying its "motion to bifurcate the survival and wrongful death claims." Yet, in its opening brief it assigns error to the trial court's "decision not to bifurcate liability and damages." Because Halifax's opening brief focuses on the issues of liability and damages, we also address the issue as one of bifurcation between liability and damages.

Bifurcation is a "practical means to assure that each party receives a fair opportunity to present their case to the jury without prejudice to the other." *Centra Health, Inc. v. Mullins*, 277 Va. 59, 78 (2009). "A determination in a civil trial regarding the bifurcation of a jury's consideration of issues is a matter for the trial court's discretion*." Allstate Ins. Co. v. Wade*, 265 Va. 383, 393 (2003). Before ordering or denying bifurcation, a trial court considers "whether any party would be prejudiced by granting or not granting such request, as well as the impact on judicial resources, expense, and unnecessary delay." *Id.* We review a trial court's ruling on a motion to bifurcate for an abuse of discretion. *Id.* at 392. "The amount of the . . . damages award alone is not determinative of whether the trial court abused its discretion." *Id.* at 393. Instead, "an abuse of discretion must be viewed from the perspective of the facts and circumstances known to the trial court at the time of its ruling." *Id.*

Halifax argues that the trial court abused its discretion because it failed to consider the potential for prejudice to the jury in hearing evidence of both liability and damages in Nelson's wrongful death and survival claims. Halifax acknowledged that its negligence caused Donaway's pressure ulcers, which resulted in injury and damages. Based on its admission, Halifax argues that "the only issue for the jury in the first phase of a bifurcated trial would have been whether those ulcers proximately caused . . . Donaway's death." Halifax contends that "[this] question . . . requires expert physician testimony . . . [and] is completely separate from the extent of damages" Donaway suffered. Halifax also alleges that the trial court failed to recognize the prejudice of not having a bifurcated trial because the jury heard "overlapping testimony" and ultimately "awarded an extraordinary amount of damages," which implies that the jury "conflated" the two causes of action.

On the record before us, the trial court did not abuse its discretion in denying Halifax's motion to bifurcate. From the outset, a trial court *may* order bifurcation if necessary, but is not *required* to order bifurcation in all cases where the plaintiff alleges both wrongful death and

- 12 -

survival claims. *See Wade*, 265 Va. at 392-93. Here, the trial court expressly considered the parties' arguments regarding bifurcation. The trial court found any potential prejudice could be resolved by appropriate jury instructions, and the jury was instructed that Nelson could only recover from *one* of her claims; notably, Halifax does not challenge on appeal that the jury instructions the trial court provided were inadequate to address any potential prejudice. And nothing in the record reflects any confusion by the jury in following the instructions given. *See Stump v. Doe*, 250 Va. 57, 62 (1995) (stating that a jury is presumed to follow jury instructions).

As discussed, *supra*, we disagree with Halifax that the jury's verdict was "extraordinary," and thus reject Halifax's argument that the amount of damages was evidence that "the jury conflated the two causes of action." The trial court also considered the complexity of the case, which involved detailed medical issues, and that the nature of the medical evidence would be the same if the trial was bifurcated. The trial court also cited "judicial economy and efficiency" in denying Halifax's motion. Based on the circumstances in this case, the trial court did not abuse its discretion in denying Halifax's motion to bifurcate.

III. Admission of Witness Testimony

Finally, Halifax contends that the trial court erred in allowing the testimony of the two nurses, Lambert and Anderson. We review the trial court's decision about the admissibility of witness testimony for abuse of discretion. *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 396 (2012). Although the trial court has discretion, it is not "free to simply act in any way it may deem desirable under the circumstances." *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 92 (2021). Rather, "the circuit court 'has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 93 (quoting *Landrum v. Chippenham and Johnston-Willis Hosps., Inc*., 282 Va. 346, 352 (2011)).

Halifax contends that the trial court erred in permitting Anderson and Lambert to testify about "irrelevant matters." Halifax alleges that Anderson's detailed testimony about Donaway's medical progress notes from Woodview for the purposes of revealing that the Woodview staff did not adequately document the ulcers' condition was irrelevant to Donaway's cause of death. Halifax also alleges that this testimony prejudiced Halifax "by suggesting that its employees were bad at documenting and monitoring the ulcers as they developed, and that they provided misleading information about the condition of the ulcers to the healthcare provider[s]."

Regarding Lambert's testimony, Halifax argues that it was likewise irrelevant and prejudicial. Lambert testified about "pressure ulcer prevention" in nursing homes and explained that nursing staff should regularly turn a patient to prevent the development of such ulcers. Lambert reviewed Donaway's medical charts from Woodview and testified that Donaway was not given adequate nursing care. Halifax argues that "whether and how . . . Donaway's ulcers developed or how they were documented was never at issue in this trial," as Halifax had already admitted that the ulcers developed as a result of their negligence. Halifax also alleges that Lambert's testimony was prejudicial because the testimony suggested that "Woodview was a bad actor that deserved to be punished with a significant damages award."

"'[T]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court,' and 'exercise of that discretion will not be disturbed on appeal in the absence of clear abuse.'" *Townes v. Va. State Bd. of Elections*, 299 Va. 34, 53 (2020) (quoting *Gross v. Stuart*, 297 Va. 769, 771 (2019)). "Evidence is relevant if it 'tends to cast any light upon the subject of the inquiry.'" *Id.* (quoting *McNeir v. Greer-Hale Chinchilla Ranch*, 194 Va. 623, 629 (1953)); *see also* Va. R. Evid. 2:401. "[E]vidence that is factually relevant may be excluded from the jury's consideration if the probative value of that

evidence is substantially outweighed by the danger of unfair prejudice." *Id.* (quoting *Norfolk & Portsmouth R.R. v. Wilson*, 276 Va. 739, 743 (2008)).

Halifax admitted that Woodview's negligence led to the development of Donaway's ulcers. Halifax, however, did not concede as to the extent of the severity of Donaway's ulcers, and in fact, acknowledged in the trial court that Nelson could "certainly put on evidence of the extent of that injury." In overruling Halifax's objection to Lambert's testimony, the trial court found that "the frequency and the duration of the injury is an issue for the jury." We agree and find that Lambert's testimony about the duration of Woodview's failure to turn and reposition Donaway was admissible for the purposes of establishing the extent, duration, and scope of Donaway's injuries. Likewise, Anderson's testimony was relevant as to the issue of the scope and deterioration of Donaway's ulcers. Anderson testified that she relied upon the Woodview staff's assessment that Donaway's ulcers were "controlled," but later found that Donaway's wounds were infected and had deteriorated.

Because Halifax's admission of Woodview's negligence was limited to the development of the ulcers, we hold that the trial court did not err in admitting the testimony of Anderson and Lambert as evidence of the full extent of the deterioration of Donaway's condition over time, which led to an infection and the need for additional medical care, and thus important evidence for the jury to consider in determining causation and damages. We therefore affirm the trial court's decision to admit this testimony.

CONCLUSION

For the foregoing reasons, the trial court's judgment is reversed and vacated in part, and affirmed in part.

*Reversed and vacated in part, and affirmed in part.*